ZACHARIAH T. CHAMPLIN BY HIS GUARDIAN GEORGE H. CHAMPLIN *vs.* EBEN SLOCUM.

MAY 22, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1) Guardian and Ward. Probate Courts. Accounts.*
While the policy of the law as well as reason and convenience require that the ordinary accounts between guardian and ward should be adjusted in the probate court and that the ward cannot maintain an action against his guardian while the guardian's account remains unsettled, this rule is confined to such questions as arise between the guardian and ward from that relationship and in regard to property rights pertaining to the guardianship.

*(2) Guardian and Ward. Value of Services Rendered by Ward to Guardian.*
Where a ward was in the employ of his guardian at the time of the creation of the guardianship and continued to work for the guardian until the termination of the guardianship, as the appointment as guardian conferred no right to the services of the ward the law implies a promise on the part of the guardian to pay what the services are reasonably worth.

*(3) Guardian and Ward. Action by Ward Against Guardian, for Services.*
The claim of a ward for his services rendered to his guardian is treated as a set-off in whole or in part of the claim of the guardian for board and where it does not exceed in amount the claim for board it is a proper matter for

adjustment in the settlement of the guardian's account in the probate court, but the probate court cannot find a balance in favor of the ward, and where the claim for services made by the ward exceeds the claim of the guardian for board the ward may bring his action to recover the value of such services and is not required to wait for the settlement of the guardian's account in the probate court.

*(4) Probate Courts. Fraud.*

A probate court is not the proper tribunal for the trial of an issue involving the question of fraud in the procuring of a release.

ASSUMPSIT. Heard on exceptions of plaintiff and sustained.

STEARNS, J. This is an action of indebitatus assumpsit brought by Zachariah T. Champlin, by his guardian George H. Champlin, against Eben Slocum, his former guardian, to recover for the value of the services of the ward rendered to said Eben Slocum during the period of the first guardianship.

On May 6, 1901, the Town Council of Exeter, sitting as a court of probate, appointed the defendant Eben Slocum the guardian of the person and estate of Zachariah T. Champlin on the ground that he was a person who from want of discretion in managing his estate was likely to bring himself to want. The estate consisted of a wood lot of the value of $100, a bank deposit of $96.33 and $26 in cash. At this time Zachariah Champlin was fifty-five years of age; he had been working as a farm laborer for the defendant for six months and continued to work for him during the period of guardianship, some fourteen years. Zachariah Champlin was a man of limited intelligence who was unable to read or write, but he was a faithful worker within the limits of his capacity. The first guardianship continued until the 10th day of May, 1915, when the probate court, on the petition of George H. Champlin, discharged said Eben Slocum as guardian on the ground that his ward was fully capable of taking care of his own affairs and ordered said Slocum to file his guardian accounts with the probate court. On the day following the termination of the guardianship, at the instance of Slocum,

it was agreed between Slocum and Zachariah Champlin that $500 should be allowed to Champlin for the value of his services to the guardian, and a general release was executed by Zachariah Champlin to Slocum. Shortly thereafter Slocum filed with the probate court his first and only account as guardian in which he allowed Champlin $500 for his work as farm hand and then charged him for board, lodging, clothing and services as guardian in such amount that, after taking a deed of his wood lot, valued at $100, the money which came to the custody of the guardian with accumulated interest, and allowing him $500 for his labor, the account showed that Champlin owed Slocum a balance of over $200. With his account, Slocum filed the release in the probate court. The guardian's account has never been settled and is still pending in the probate court.

About two months after Slocum was discharged as guardian, George H. Champlin filed a petition in the probate court in which he asked for the appointment of himself as guardian on the ground that Zachariah Champlin was a man of unsound mind. This petition was granted by the probate court in December, 1915. This suit is brought by the new guardian to compel the former guardian to pay for the value of the services of said ward for the time while Zachariah was under the guardianship of Slocum. In addition to the general issue, the defendant pleaded the release and in his replication the plaintiff alleged that the release in question was executed by a person of unsound mind who was incapable of executing a valid release and was so known to be by the defendant.

The case was tried before a jury in the Superior Court. At the conclusion of the testimony the justice presiding, upon the motion of the defendant directed a verdict for the defendant, on the ground that as the subject matter of the suit was one which involved the relations of guardian and ward, the cause was one to be adjudicated in the probate court on the allowance or disallowance of the account of the guardian and that the Superior Court had no juris-

diction.    To this ruling the plaintiff duly excepted and the case is now before this court on that exception.

(1)    We think that the ruling of the trial court was erroneous. The plaintiff, by his guardian, is entitled to bring this suit, and he is not required to wait for the settlement of the guardianship account in the probate court.

The statutes give the probate court jurisdiction over the settlement of accounts of guardians.    The policy of the law as well as reason and convenience require that the ordinary accounts between guardian and ward should be adjusted in that court and the established rule is that the ward cannot maintain an action against his guardian while his guardian's accounts remain unsettled in the probate court.

(2)    The probate court appoints the guardian and for cause may remove him.    The inventory of the estate and the accounts of the guardian are made to the probate court, which has the power to direct and supervise the management of the estate and is thus in a position to settle the affairs of the ward expeditiously and with a minimum of expense. The general rule above referred to however does not include all matters of litigation which may arise between the guard-- ian and the ward but is confined to such questions as arise between the guardian and ward arising from that relationship and in regard to property rights pertaining to the guardianship.

In the case at bar the plaintiff was in the employ of the defendant at the time of the creation of the guardianship and he continued to work for the defendant until the termination of the guardianship.    The appointment as guardian conferred no right upon the defendant to the services of plaintiff, his ward, and the law implies a promise on the part of the guardian who has received the benefit of the services of the ward to pay the amount which such services are reasonably worth.    The rule is generally recognized that if the services of the ward are of value he is entitled to set-off their value against the claim of the guardian for his board.    The claim of the ward for services is treated as a

set-off in whole or in part of the claim for board and where it does not exceed in amount the claim for board it is a proper matter for adjustment in the settlement of the guardian's account in the probate court. This has been the common practice in different jurisdictions and the cases in which this doctrine has been applied have usually been cases in which a ward under age was concerned. In such cases the value of the service rendered is usually less than the value of the board. In the present case however the plaintiff is an adult who claims that the value of his services is much in excess of the value of his board. There is a practical difficulty thus presented in the settlement of this account in the probate court as the probate court in allowing the set-off is limited to the allowance of an amount equal to or less than the charge for board and cannot find a balance in favor of the ward in regard to this item. One reason for this limitation on the power of the probate court doubtless is that the effect of allowing a balance, in regard to this item, in favor of the ward would be, to that extent, to charge not only the guardian for such balance but also the surety on his bond in the event of his failure to pay such balance. It is plain that the value of the services of the ward is not the kind of property which the guardian is bound to inventory and make true account of to the probate court and for the probate court to charge the guardian for this surplus as above indicated, in effect, would be to change and increase the liability of the surety on the guardian's bond.

(4) The probate court is not the proper tribunal for the trial of the issues in this case for another reason. In his replication the plaintiff alleges, in effect, that the release was procured by fraud. In *O'Connor* v. *O'Connor*, 20 R. I. 130, this court held that the court of probate, which has no equity jurisdiction, is not adapted to the investigation and determination of question of fraud. The rule is well settled that the jurisdiction of law and equity on the question of fraud of this character is concurrent. *Carroll* v. *Salisbury*, 28 R. I. 16.

As this case must be sent back to the Superior Court for another trial it is not necessary to consider the other exceptions of the plaintiff.

The case is remitted to the Superior Court with direction to grant the plaintiff a new trial.

*Edward M., Francis E., and John J. Sullivan,* for plaintiff.
*Benjamin W. Grim,* for defendant.