IN RE GUARDIANSHIP OF FRANCIS P. ANDERSON.

C. W. MYERS, Appellant, v. FRANCIS P. ANDERSON, Appellee.

No. 39409.

*Ed. A. Schmidt*, for appellant.

*H. O. Weaver*, for appellee.

KINDIG, J.—P. A. Anderson died, and left surviving him his son, Francis P. Anderson, the ward and appellee herein. One S. P. Metzger was first appointed guardian of the ward's estate.  Later, that guardian resigned, and thereupon appellant, C. W. Myers, the minor's brother-in-law, was duly appointed and qualified as such trust officer, on or about November 23, 1915. He acted in that capacity until appellee became of age.

A controversy over the accounting of the trust funds gives rise to the present litigation. It is not disputed that, on or about the 17th day of February, 1916, the appellant, as guardian, received $940.47 belonging to appellee, the ward. No part of that fund, or any interest thereon, has ever been paid to appellee by appellant. An inventory was filed in the guardianship proceedings by appellant on June 2, 1923. That was the first accounting of any kind ever made by the guardian. Such financial statement was in the nature of an annual report. Therein appellant contended that all the property and moneys of the ward had been utilized for the latter's support. Furthermore, appellant indicated that the ward was indebted to him in the sum of $392 for care, clothing, and education. Exceptions were taken to this report, in the ward's behalf, by his next friend; whereupon, the appellant addressed a letter to the Honorable Oscar Hale, judge of the district court, offering to settle with the ward for the sum of $500. This communication was as follows:

"In regard to the annual report filed by me recently, as

guardian of Francis P. Anderson, and the objections filed by C. E. Anderson, I desire to say that I am willing to agree, and do agree to pay to Francis P. Anderson, when he becomes of age, the sum of $500 without interest, and if this is agreeable to your honor, I will make a new report, showing that I hold the sum of $500 to be paid as above stated.''

The offer was rejected. At that time, the ward, who had been living with his guardian, left, and obtained employment elsewhere in the neighborhood. Thus matters rested until July 30, 1927, when the appellee filed an action in the district court of Louisa County, asking for a settlement of the guardianship affairs (which action is still pending). Succeeding this, on September 7th, the appellant filed his final report, which was amended February 1, 1928. According to this accounting, all the ward's property and more were consumed by the guardian in boarding, clothing, and educating the ward.

All these expenditures and appropriations of the appellee's money were made by appellant without any order or authorization of court. Objections were made to this account by the appellee, and a trial was had thereon. As before stated, the district court, upon that hearing, disapproved appellant's final report, and entered judgment against him for $1,615.30. Included therein was the $940.47 principal, together with interest thereon at the rate of 6 per cent per annum from February 17, 1916. Also, the district court denied appellant any compensation for his services as guardian, because he mismanaged appellee's estate, and the only attorney fee allowed appellant was $25, for the preparation of the final report. About this appellant now complains, and the various points in the controversy will be considered in the order discussed by him.

I. Evidence was introduced by appellant to show that the reasonable value of appellee's board was from $6.00 to $8.00 a week from December, 1915, to May, 1923. Thereby it is sought to counterbalance that expense against the ward's funds in the guardian's hands. Appellant's witnesses who thus testified were his bondsmen, Howard B. Myers and J. B. McCulley, and a brother-in-law, J. E. Welton. Basis for the statement of these witnesses in that regard seems to have been the cost of boarding men engaged in road work and industrial enterprises. These

witnesses did not take into account the services rendered appellant by appellee. The ward was 11 years of age when he entered appellant's home. From that time until he was 18 years old, appellee constantly worked for appellant and his wife. During the interim of this guardianship, appellant was a farmer, who cultivated a farm containing from 160 to 200 acres. In his younger years, appellee did chores around the farmyard, helped in the kitchen, washed dishes, churned, got water, took care of the garden, and did anything else he was called upon to do. Throughout this period, appellant kept a hired man in the summertime, but did not have a hired girl, although his family consisted of several children. Therefore, appellee's services were necessary for appellant's wife. However, when appellee became 14 years of age, he continued working in the house, doing chores outside, and in addition thereto, worked in the field with a team. Undoubtedly, during the last years of his services, appellee took the place of a hired man. Appellee attended educational institutions until he lacked about a year and a half of finishing high school. Yet, during all that time, he was working, as aforesaid, and all his time was devoted to labor throughout the vacation periods. Apparently appellee was a dutiful and obedient boy, industrious, and anxious to be of service to appellant and his family.

Significant at this juncture is the fact that appellant has no complaint whatever concerning appellee's conduct. Neighbors testified for appellee. They told of his industry, his usefulness about the house and the farmyard, and his labors in the fields. Those witnesses also said that appellee's services during the school vacations in the later years of his life were worth from $35 to $40 per month. Moreover, these same testifiers declared that at all times appellee reasonably and fairly earned at least his board, clothing, and medical and school expenses. Manifestly, a careful reading of the record compels the conclusion that the preponderance of the evidence is to the effect that appellee earned his board, clothing, and educational and other necessities. Evidently, the total expenditure made by appellant for appellee, covering all items except board, was $297.90. Hence, it is clear that appellee earned more than that sum while working for appellant during the summer vacation months. Through the rest

of the year, appellee earned his board, performing the services before described.

Equity and good conscience will not permit appellant to demand and receive appellee's services to the extent and value shown in this record, and at the same time charge him for board, clothing, and other necessary expenses of life. Said services were more valuable than the cost of board, clothing, and school necessities. *Foteaux v. Lepage,* 6 Iowa 123; *Champlin v. Slocum,* 41 R. I. 227 (103 Atl. 706); *Doan v. Dow,* 8 Ind. App. 324 (35 N. E. 709). See, also, *Gerdes v. Weiser,* 54 Iowa 591.

Obviously, appellant's alleged offset, suggested in the final report, was made for the purpose of consuming the ward's estate. Impliedly at least, appellant acknowledged that he was indebted to some extent, because, in the letter to Judge Hale, $500 was offered in settlement. A guardianship of a minor's property is fundamentally for the purpose of conserving the estate, rather than dissipating and exhausting it. If the guardian did not desire the ward's services, he was not compelled to accept them; but when he has done so, reasonable credit must be allowed therefor.

While reaching this conclusion, we have given full consideration to the guardian's so-called account book, but are, nevertheless, constrained to hold that the finding of the district court is right.

II. Complaint is also made by the guardian because the district court did not allow him compensation for executing the trust, and reimbursement for attorney fees required. Two sections of the 1927 Code relate to this subject, as follows:

"12581. Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, * * * and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

"12599. Guardians shall receive such compensation as the court may from time to time allow, the amount and the service for which it was made being entered upon the records of the court."

But one act was done by this guardian according to law in behalf of the minor, and that was to file a final report. Wherefore, the only legal services required were in the preparation of

 that document. Under no other circumstances did this guardian employ an attorney for the purpose of the trust, and the compensation allowed therefor by the district court in the sum of $25 was not unreasonable, within the purview of this record. On the other hand, the guardian rather mismanaged, than managed, the ward's estate, to the extent and degree that we are not warranted in interfering with the court's discretion in denying him compensation for services rendered therein. *Foteaux v. Lepage*, supra; 28 Corpus Juris 1235, Section 406. Aptly, it is said in *Foteaux v. Lepage*, supra:

"Where he [the guardian] shows * * * a degree of carelessness and negligence in the discharge of his duty, and in the custody of the estate of the ward, the court will be justified in withholding any compensation."

From the time of the guardian's appointment, late in 1915, until an alleged annual report, filed June 2, 1923, no accounting or inventory of any kind was offered to the court or the ward, although Section 12597 of the Code requires that a guardian render an account to the district court at least once each year. More than this, all the trust money was mingled with the guardian's property, and there appropriated, as shown by the purported final report filed in 1927 and the subsequent amendment thereof in 1928. Clearly, the trust funds were administered for the benefit of the guardian, rather than for the ward. Interest was not permitted to accumulate on the principal, in order that there might be maintained and preserved the aggregate sum for the use of the ward when he entered into the world for himself. Carelessness, neglect, and malfeasance appear continually through every action of the guardian in the execution of this trust. Consequently, the trial court was justified in denying compensation for such services.

III. Finally, objection is made to that part of the judgment and decree of the district court wherein the guardian was charged with interest on the principal sum at the rate of 6 per cent per annum. Guardians are required to exercise reasonable diligence to keep the funds of the ward loaned, under orders of

the court. *In re Estate of Stude,* 179 Iowa 785, contains the following appropriate discussion:

"But it is well established that a guardian may not keep idle the money or property of his wards, but is bound to all reasonable diligence in keeping the money loaned out on good security under the orders of the court, and in procuring ordinary returns from other property; and, if he refuses or neglects to invest the money in loans such as may be approved by the court, the general rule is that he will be charged a reasonable rate of interest for the use of the money he has neglected to loan. Of course, he is not required, at his peril, to keep the funds of his wards so invested at all times, but he must exercise reasonable diligence to keep it so invested; and, if he fails so to do, he will, as said, be charged with a reasonable rate of interest for the use of the money during the period it might have been loaned out."

To the same effect see *In re Estate of Young,* 97 Iowa 218. Likewise, in *Minor Heirs of Bradford v. Bodfish,* 39 Iowa 681, it is said:

"It was his [the guardian's] duty to invest the money, and he will be charged as though this had been done. He will be charged with six per cent annual interest * * *."

Similarly, the rule charging a guardian with interest for failure to perform his duties was recognized in *In re Guardianship of Blakeney v. Wyland,* 115 Iowa 607. Resultantly, we would not be justified in disturbing the action of the district court in this respect.

Therefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.