John J. Dillon, S.
Twelve objections have been filed by the decedent’s two sons to the account of the administratrix, their stepmother. Objection “ 8 ” has been withdrawn and is, accordingly, dismissed. Objections “6” and “11”, relating to the fees payable to accountants and attorneys, are to be the subject of a later conference. The nine remaining objections are disposed of as follows:
(1) It is claimed that the administratrix has failed to charge herself with an asset of the decedent, consisting of a one-half interest in a business conducted in Port Chester under the assumed name of Texas Lunch Co. The administratrix denies that her husband had any such interest. The objectants have introduced proof showing that over a period of years the decedent worked in the Texas Lunch Co. under circumstances which they claim justifies the conclusion that he was more than an employee and must have had a proprietary interest. Such proof is at best uncertain and speculative. It is unsupported by any documentary evidence. On the other hand, it appears that the business was purchased in' 1946 from the previous proprietors by one Sam Kaplan, and that the bill of sale named Kaplan as sole purchaser. The certificate filed in the County Clerk’s office, as required by section 440 of the Penal Law, named Sam Kaplan as the sole owner until his death and thereafter named only his estate. The leases of the premises on which the business was conducted were negotiated solely by Kaplan. An attorney who represented both Sam Kaplan and John T. Re over a period of years disclaimed any knowledge of an assertion of ownership by the latter during his lifetime. It appears that Kaplan and Re were jointly engaged in other business ventures conducted under corporate forms, but that fact cannot justify the conclusion that all of their activities were joint and equal ventures. The evidence fails to support the objectants’ claim and the first objection is accordingly dismissed.
(2) The decedent and his wife had been the owners of a *941 parcel of real estate purchased with the funds of both. Shortly before the decedent’s death the property was sold and the proceeds were deposited in a joint bank account. The wife thereupon drew a check of $7,500 upon this account and used it to pay a personal obligation of her own to a brokerage firm "with whom she maintained a margin account. Shortly thereafter the decedent died. It is claimed that the $7,500 constituted a loan from the decedent to his wife and that it should appear in the account as an estate asset. The only evidence in support of the claim is the testimony of one of the objectants that his stepmother told him at the time of the transaction that the payment was a loan from her husband. The widow testified, on the contrary, that she heard the deceased tell her stepson that he (the decedent) had instructed her to pay the indebtedness out of the joint account. The evidence is insufficient to establish any debt owing to the estate by the widow. The fact that the wife had contributed her own funds toward the original purchase of the property, and that the proceeds of the sale were deposited in an account to which she had complete access, makes plain the conclusion that there was no loan and that there was no occasion for any. The second objection is accordingly dismissed.
(3) It is claimed that the administratrix was negligent in failing to sell more promptly the securities listed in Schedule “ B ” of the account and should be surcharged for at least a part of the losses of $18,769.27 shown in that schedule. The decedent died on July 14,1957. Letters of administration were issued to the widow on September 9, 1957. As shown by Schedule “ B ” nearly all the securities on' which losses were sustained were sold on October 9, 1957 and the balance on the following day. It may be that under some circumstances a finding of negligence could be predicated upon a delay of one month in the sale of assets by a fiduciary, but certainly the conditions would have to be unusual to justify such a finding. There is evidence here that prior to her appointment the widow had been warned by Joseph Be, whose business was that of a stockbroker, that a declining market was to be expected, and we may assume that she took office as administratrix with knowledge of that warning. But she had the right to seek the counsel of others after her appointment, and she was entitled to consider the likelihood of criticism if a hasty sale had been followed by a reversal in the market’s downward trend. Instantaneous action based upon extraordinary foresight is not required of a fiduciary. He is entitled at least to sufficient time to consider and to consult. The moderate delay which occurred in this case between the *942 date of appointment and the date of sale was reasonable. The claim of negligence is unsupported, and the third objection is accordingly dismissed.
(4) Objection is made to the purchase of a 12-grave burial plot by the administratrix at estate expense and to the subsequent action of the administratrix in limiting the number of permissible burials to four. Although the authority of an estate representative is normally limited to the purchase of a single place of burial for the decedent, the objection is not based upon the acquisition of a multiple-grave plot, probably because it is conceded that the objectants helped to select the plot actually acquired. The objection is based upon the unilateral action of the widow in restricting the plot to four interments. The evidence was sufficient to establish this fact, and the further fact that the maximum number of burials permitted in the plot would have been eight. The administratrix exceeded her authority in agreeing to a lesser use of a burial plot purchased at estate expense. The cost of the plot was $2,400. The decree will provide that the administratrix shall either cause the restriction to be removed, or in the alternative that she be surcharged in the sum of $1,200, representing half the cost of the plot. To that extent the objection is sustained.
(5) Objection is made to an expenditure of $1,500 for perpetual care of the burial plot, on the ground that the objectantsoffered to perform the same service without charge. A payment for perpetual care is proper (Surrogate’s Ct. Act, § 314), and it is obvious that living persons could not supply such care in perpetuity. The fifth objection is, therefore, dismissed.
(7) Objection is made to a payment of $763 for household furniture purchased by the decedent but not fully paid for at the time of his death. The evidence is clear that the estate was bound by the decedent’s contract of purchase, and the seventh objection is dismissed.
(9) This objection is repetitious of others and is disposed of in the same manner.
(10) The objection that commissions should be disallowed because of maladministration is not sustained by the evidence and is, therefore, dismissed.
(12) This objection is in the main repetitious of the third objection and is dismissed for the same reasons.
Counsel may arrange to confer with the court for the purpose of disposing of the sixth and eleventh objections. Thereafter the decree should be settled on notice. Proceed accordingly.