IN RE ESTATE OF HERBERT CAMPBELL, DECEASED.
GLORIA JUNE BATES ET AL., APPELLANTS, V. SCOTTSBLUFF
NATIONAL BANK ET AL., APPELLEES.

209 N. W. 2d 165

Filed July 6, 1973. No. 38784.

Murphy, Pedersen & Piccolo, for appellants.

Wright & Simmons, John F. Wright, and John F. Simmons, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.
Herbert Campbell died testate on August 13, 1969.

His will was admitted to probate and letters testamentary issued to Elmer Glantz and The Scottsbluff National Bank on September 11, 1969.

The executors filed their report and petition for final settlement on October 14, 1970. Objections to the report were filed by the widow and eight of the residuary legatees. The objectors alleged that neglect and unreasonable delay by the executors in selling the personal estate of the deceased resulted in a substantial loss to the estate for which the executors should be held liable. The county court overruled the objections and approved the report of the executors. Upon appeal, the District Court found the executors did not unreasonably delay in selling the personal estate of the deceased and dismissed the objections. The objectors appeal.

The will directed the executors to convert into cash all the property of the testator except that specifically bequeathed to his widow. At the time of his death the testator owned shares of stock which had a market value of $191,690. The Scientific Controls stock was sold on April 27, 1970. All the other stock, except fractional shares, was sold on August 12, 1970. At the time it was sold the stock had a market value of $125,356 or $66,334 less than its market value on the date of the testator's death. The objectors contend that if the stock had been sold at a "logical time," it would have had a market value of $202,468, and the executors' account should be charged with the difference of $77,112.

The objectors rely on section 30-1408, R. R. S. 1943, which provides when an executor shall neglect or unreasonably delay to raise money by selling the personal estate of the deceased and the value of the estate shall thereby be lessened, the same shall be deemed waste, and damages sustained may be charged against the executor in his account.

The general rule is that an executor in discharging his trust duties must exercise the care, prudence, and judgment that a man of fair, average capacity and ability

exercises in the transaction of his own business. In re Estate of Bush, 89 Neb. 334, 131 N. W. 602; In re Estate of Hunter, 129 Neb. 529, 262 N. W. 41. The executor is not required to liquidate the personal estate at the earliest possible time. He is entitled to sufficient time to consider and consult. Instantaneous action based upon extraordinary foresight is not required. In re Re's Estate, 22 Misc. 2d 939, 199 N. Y. S. 2d 172. But, if there is an unreasonable delay in complying with the testamentary direction to convert the property into cash, any loss resulting should be charged to the executor.

The executors rely on section 24-602, R. R. S. 1943, which provides that trust funds received by executors may be kept invested in the securities received by them, unless otherwise ordered by the court or unless the trust instrument directs a change in investments, and they shall not be liable for any loss that may occur through the depreciation of such securities.

Section 24-602, R. R. S. 1943, refers to trust funds that may be kept invested. We are of the opinion it does not apply to securities which the will directs shall be sold. Consequently, the issue here is whether the executors were guilty of neglect or unreasonable delay in selling the stock owned by the deceased.

Most of the securities which were owned by the deceased are described in the record as being speculative or medium grade securities. After the deceased died there was a general decline in the securities market. Some of the securities owned by the deceased declined in price steadily from the time of his death until they were sold. Others appreciated in value and then declined sharply.

On or about the date the executors were appointed and qualified, the market value of the stock owned by the deceased had depreciated to $187,418. If the stock had been sold within the next 90 days, there could have been a small gain. On March 13, 1970, 6 months after

the appointment of the executors, the stock had a market value of $171,943.

The executors argue it was reasonable to expect market conditions to improve and they would have been criticized if the stock had increased in value after it had been liquidated. The difficulty with this argument is that it was not the duty of the executors to hold the stock for appreciation. Their duty was to convert the stock into cash without unreasonable delay. The executors did not seek the instructions of the court or attempt to obtain the consent of the beneficiaries to a delay in the liquidation of the stock.

The fact that most of the securities involved in this case were of a speculative nature was a circumstance that weighed heavily against any delay in their liquidation. Prompt liquidation of speculative assets is the proper rule. In re Stumpp's Estate, 153 Misc. 92, 274 N. Y. S. 466.

The objectors' contention that the stock should have been sold at a "logical time" was based on the testimony of Curtis Cramer, an associate professor of Economics at the University of Wyoming. Professor Cramer made an analysis of each security, based upon its market performance and other factors, and arrived at an opinion as to a "logical" date upon which each individual security should have been sold. The study involved expert opinion and was made in retrospect. It was not a reasonable basis upon which the liability of the executors should be determined.

We have concluded that under the facts and circumstances in this case it was unreasonable for the executors to delay the sale of the securities owned by the deceased beyond a period of 6 months from the date of their appointment. We find their account should be surcharged in an amount equal to the difference between the amount which would have been realized if each stock had been sold at the lowest price reached during the 6-month period following their appointment and the price at

which the stock was eventually sold, but less the amount of any additional estate and inheritance taxes which would have been payable if the stock had been sold during the 6-month period.  See, In re Draser's Estate, 81 N. Y. S. 2d 648; In re Garvin's Will, 256 N. Y. 518, 177 N. E. 24.

The judgment of the District Court is reversed and the cause remanded for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.