In the Matter of the ESTATE of Maude Popp WIESE, Deceased.

PEOPLES BANK AND TRUST COMPANY, Executor, Appellant,

v.

Mae ALBERTSON, Mary Jane Johnston, Marietta Rusconi and Mary Helen Lumsden, Daughter of Vera Bailey, Deceased, Appellees.

No. 2–58254.

Supreme Court of Iowa.

Aug. 31, 1977.

Leo M. Baker and C. Kevin McCrindle, of Reed, Merner, Sindlinger, Baker & Sabbath, Cedar Falls, for appellant.

James M. Prichard, of White, Prichard, Flores & Havens, Storm Lake, for appellee, Mae Albertson.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES, and McCORMICK, JJ.

RAWLINGS, Justice.

Executor, Peoples Bank and Trust Company, filed a final report to which one of several devisees formally objected. Trial court held for objector and executor appeals. We reverse.

Maude Popp Wiese died September 22, 1973, and her will was filed for probate three days later in Black Hawk District Court. Peoples Bank and Trust Company (Trust Company) was appointed executor.

The will made several specific bequests and directed the executor to dispose of certain personalty listed in a separate but integrated document. Item IV of the will provided:

"All the rest, residue and remainder of my property, be it real, personal or mixed, I direct my executor hereinafter named to *convert into cash within a reasonable time after my death, having regard to economic conditions at the date of my death so that said property will not be liquidated at a loss* and from the proceeds thereof he shall pay to the following named persons the following amounts:" (There follows a list of beneficiaries, including the objector). (emphasis supplied).

The residue included the presently involved "blue chip" stocks and debentures.

These securities, along with testator's other possessions, were subject to a previously created guardianship, the present executor having served as guardian. The guardianship was closed December 27, 1973. Trial court appropriately concluded it would have been difficult, if not impossible, for Trust Company to have liquidated the securities until after this guardianship had been terminated.

From date of testator's death to termination of the guardianship, the Dow Jones Averages indicated a dramatic decline in the stock market. September 25, 1973, when the will was admitted to probate, the portfolio was valued at $42,190.00. January 25, 1974, or less than one month after the guardianship had been closed, the value thereof had fallen to $37,888.36.

Because of the low market, Trust Company delayed sale of the stocks and debentures. This decision was supported by Trust Company's market advisory service, Harris Trust and Savings Bank of Chicago

(Harris), which had opined the market would recover after December, 1973. That prediction seemed to be confirmed by a short market rally in January-February, 1974.

After this brief recovery, however, the market again declined steadily through June. Moreover, interest rates nationally increased dramatically. These economic conditions prompted a sale of the securities in late June for $32,300.33.

Mae Albertson, a residuary beneficiary, subsequently filed objections to Trust Company's final report, thereby voicing complaint regarding the alleged delay in sale. Objector asserts a reasonable date for liquidating the securities would have been January 25, 1974, when the stocks were still valued at $37,888.36. She seeks to recover the difference between this amount and the June sale price.

Trust Company contends its duty to sell was tempered by testator's instructions that due regard be given to prevailing economic conditions so as to avoid a loss. The decision not to liquidate until advent of a more favorable market was premised upon several factors, including the conservative nature of involved portfolio, declining interest rates in late 1973, and a slight recovery in early 1974, coupled with advice from Harris and executor's own officers. Trust Company asserts this conduct was consistent with responsibilities created by the will and the duty of care imposed by law on fiduciaries.

Trial court held for objector and in so doing found Trust Company had neither acted as a reasonably prudent fiduciary nor adequately followed Item IV directions of the will, quoted above. Item IV was thus interpreted:

"The Court is satisfied that the testator's primary motive was to have her assets converted into cash in a manner that would minimize any losses by holding the securities after her death. She was obviously not interested in possible appreciation in the value of her estate after her death. Furthermore, her direction to her executor gives one no reason to believe that she would have wanted the executor to try to recoup losses that occurred between the date of her death and the earliest possible date that the assets could have been converted. The Executor's approach to the handling of the assets of this estate seems to rely largely upon that body of court decisions which would apply when a fiduciary is given general, unrestricted powers in the trust or testamentary instrument. But those general rules are not applicable under the language of the will in this case."

By the attendantly entered order trial court held Trust Company liable to residuary beneficiaries in the amount of $5,588.03. This appeal stems from that adjudication.

These are the issues here raised:

(1) Whether trial court erroneously interpreted Item IV of testator's will;

(2) Whether Trust Company acted reasonably by liquidating the securities in June, 1974;

(3) Whether public policy demands reversal of trial court's decision?

Not all of those issues need be resolved.

■ I. Our review is de novo. *Matter of Estate of Kruse*, 250 N.W.2d 432, 433 (Iowa 1977); Section 633.33, The Code 1975. We give weight to trial court's findings but are not thereby bound. Iowa R.Civ.P. 344(f)(7).

II. Next noted are some general guiding precepts regarding an executor's status and standard of care.

This court has stated a duly appointed executor is a fiduciary, thus frequently referred to as a trustee for all interested parties. *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972). See also *Humane Society, Etc. v. Austin Nat. Bank*, 531 S.W.2d 574, 577 (Tex.1975); 31 Am.Jur.2d, Executors and Administrators, § 2; 33 C.J.S. Executors and Administrators § 3g.

■ However, the law recognizes a distinction between the ordinary trustee and an executor or administrator. *In re Estate of Swanson*, 239 Iowa 294, 302, 31 N.W.2d 385, 390 (1948). Generally, the duties of an

executor, as contrasted with those of a trustee, are limited to winding up of the estate and are temporary in character. *Hanson v. Birmingham*, 92 F.Supp. 33, 44 (N.D.Iowa 1950). An executor usually collects decedent's personal property, reduces it to cash so far as is necessary, pays expenses, taxes and creditors, then effects distribution to devisees. Bogert & Bogert, Law of Trusts, § 15 (5th ed. 1973). See also *Humane Society, Etc. v. Austin Nat. Bank*, 531 S.W.2d at 580; Matter of Estate of Larson, 87 Misc.2d 397, 385 N.Y.S.2d 720, 724 (Sur.Ct.1976).

■ On the other hand, even though one is named executor only and no reference is made in the will to his acting as trustee, if trust functions are vested he will be deemed a trustee with regard to those duties. See Bogert & Bogert, *supra* ; Restatement (Second) of Trusts, § 6, Comment b (1959). As summarized in 31 Am.Jur.2d, Executors and Administrators, § 3:

"Whenever any interest in the nature of a trust, or duty implying a trust, is created by a will, and there is no special designation of the executor or any other person as trustee, it is incumbent on the executor, as such, to administer the estate according to the provisions of the will. Where the duties imposed on executors are active and render the possession of the estate convenient and reasonably necessary, they will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit terms."

See also *Wilson v. Snow*, 228 U.S. 217, 33 S.Ct. 487, 490, 57 L.Ed. 807 (1913); *Evans v. Ockershausen*, 69 App.D.C. 285, 100 F.2d 695, 703 (1938).

Finally, the Model Prudent Person Investment Act, adopted by the legislature in 1965, provides this statutory standard of care for fiduciaries:

"1. *Investments by fiduciaries.* In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs, not for the purpose of speculation, but with regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety, of their capital. Within the limitations of the foregoing standards, a fiduciary is authorized to acquire and retain every kind of property and every kind of investment, specifically including, but not by way of limitation, bonds, debentures, and other corporate obligations, and stocks and shares, preferred or common, which persons of prudence, discretion and intelligence acquire or retain for their own account.

"2. *Limitations.* Nothing contained in this Code shall be construed as authorizing any departure by a fiduciary from, or his variation of, the express terms or limitations set forth in any will, agreement, court order, or other instrument creating or defining the fiduciary's duties and powers * * *." Section 633.123, The Code.

■ III. What then were the duties here imposed by Item IV of the will?

Trust company contends this provision placed upon it more than ordinary administrative duties, temporary in character, i. e., it was to liquidate the securities at a time and in such manner as to minimize any losses, having regard to economic conditions at time of death. In other words, Trust Company says it was to act as a trustee, with its standard of care being that of the prudent person expressed in § 633.123, The Code. See also § 633.157.

Objector urges Item IV, in effect, told Trust Company not to gamble on the future course of the market if it was on the decline at time of testator's death. She thereupon postulates Trust Company should be held liable for those losses occurring after a reasonable time for sale of the securities. Supportively cited is § 633.160, The Code.

Actually the problem posed is whether testator's directive provided Trust Company with such discretion that it could delay nine

months in effectuating disposition of the securities.

Trust Company's duty to study economic conditions at testator's death "so that said property will not be liquidated at a loss" is not susceptible to the peremptory construction urged by objector and applied by trial court. The clear meaning of the testamentary language is a vesting of power in the executor to defer sale of the securities for a reasonable time if economic conditions indicate deferral would be in the best interests of the estate. Had it been testator's intent to strictly limit Trust Company's discretion, she could have merely directed it to promptly convert the residuary estate into cash. But this she did not do.

In light of the foregoing, we hold the prudent person rule of § 633.123, The Code, is instantly applicable. See Kurtz & Reimer, Iowa Estates, § 10.5, at 362–363 (Addendum 1975). See also § 633.157, The Code. Admittedly such standard is not specifically stated in the involved will, but the basic principle now voiced in the statute should be applied to management of estates in certain areas other than investment. See M. Heartney, Jr., Trusts Under the Iowa Probate Code, 49 Iowa L.Rev. 693, 722 (1964).

For example, in determining whether a fiduciary was individually liable for deposits in a bank which subsequently failed, this court stated:

"The duty of an administrator or other trustee in such cases is well settled in this state. Such officers are not insurers of the safety of the funds coming into their possession by virtue of their respective offices, but they must exercise that degree of care and prudence with reference thereto that ordinarily prudent men exercise in regard to their own affairs." *In re Estate of Enfield*, 217 Iowa 273, 274, 251 N.W. 637, 637–638 (1933).

A case even more closely on point is *In re Estate of Fisher*, 128 Iowa 626, 104 N.W. 1023 (1905), where it was held the decision of an executrix to sell or retain securities which were the corpus of a testamentary trust was governed by the prudent man standard. There the court held Section 3322, The Code 1897 (compare Section 633.-386, The Code 1975), permitting immediate sale of certain estate property was inapplicable, and in so doing said:

"[B]y the expression, 'likely to depreciate in value,' as used in the statute, nothing more was meant, as we think, than some permanent loss to the property in whole or in part. Most certainly it was not intended thereby to require under penalty of personal liability an immediate sale of all property subject to fluctuations in market value, and solely because thereof. Indeed, by inexorable law of the world of commerce, every species of personal property which is the subject of barter and sale is held to respond to the frequent, if not daily, fluctuation in market values; and, if an executor were bound at his peril to guard against such, there would be as much reason in holding him to a liability for selling too soon as there would be in mulcting him in damages for having held too long. In any event, the subject cannot be governed by a hard and fast rule. Reasonable business prudence is all that is required at the hands of one managing an estate. 'He is not, however, a guarantor of the safety of the property, but he must act with such prudence and diligence as are generally observed by prudent men of intelligence and discretion in regard to their own affairs. (Citation).'" 128 Iowa at 630, 104 N.W. at 1024.

See also *In re Estate of Rorick*, 218 Iowa 107, 253 N.W. 916 (1934); *In re Estate of Bagnola*, 178 Iowa 757, 764, 154 N.W. 461, 464 (1915); *In re Estate of Ring*, 132 Iowa 216, 109 N.W. 710 (1906); 49 Iowa L.Rev., at 722, n. 134.

This court is persuaded the above authorities, *Fisher* in particular, support our instant application of the prudent person standard as embodied in § 633.123(1), quoted above. Furthermore, subsection 2 thereof serves only to provide restrictions on the fiduciary's traditional powers by virtue of specific language in the instrument, not here supplied.

We do not believe testator, by Item IV, intended to create full investment powers in Trust Company. At the same time, testator clearly granted the executor discretion to retain the securities for a reasonable length of time if the financial picture so dictated. See also § 633.348, The Code. To that extent Trust Company's powers were governed by the statutory standard, absent any subsection 2 restraint.

■ IV. We must now, therefore, determine whether Trust Company exercised that ordinary care and prudence which the particular circumstances required. In this regard it is initially understood poor judgment, not bad faith, is the presently asserted basis of liability. See 33 C.J.S. Executors and Administrators § 184.

Trust Company maintains withholding sale of the securities for a period of nine months following testator's death was not unreasonable in light of all surrounding conditions. Conversely objector takes the position that four months would have been reasonable time within which to sell and any loss occurring thereafter should be attributable to Trust Company's mismanagement.

An analysis of these competing views requires an understanding of some pertinent rules. Noticeably, there is no statute in Iowa which fixes the time during which an executor must dispose of securities coming into its possession.

■ And, absent directions to the contrary, an executor is not generally required to promptly liquidate personalty. As one court aptly noted:

"No duty is imposed on an executor to dispose of such securities immediately without regard to the market for them or the possibility of an advance in value. Certainly, assets ought not be hastily sacrificed any more than they should be improvidently held. Each case must rest on its own facts." In re Estate of Bayles, 108 N.J.Super. 446, 261 A.2d 684, 690 (App.Div.1970).

Instantaneous action based upon extraordinary foresight is not routinely required.

Still, if there is unreasonable delay in complying with the testamentary direction to convert property into cash, any resultant loss may be charged to the executor. In re Estate of Campbell, 190 Neb. 456, 209 N.W.2d 165 (1973).

At this point some additional guiding precepts should be recognized.

■ The standard of care generally applicable to executors is that degree of prudence and diligence which a person of ordinary judgment would be expected to bestow upon his own affairs of a like nature. Fisher, quoted supra. However, with respect to assets coming into the hands of a fiduciary, there is an additional burden to act more cautiously than would be expected in the management of its own property. Furthermore, a bank normally engaged in a fiduciary capacity must exercise the skill and knowledge ordinarily possessed by such professionals. Estate of Beach, 15 Cal.3d 623, 125 Cal.Rptr. 570, 542 P.2d 994, 998 (1975).

As heretofore observed, trial court properly found the extant guardianship was not closed until December 27, 1973, through no fault of the guardian-executor. The effect of this circumstance, as previously noted, was that the assets subject to Item IV could not have been sold before December 27, 1973. And when Trust Company first became capable of liquidating the securities the estate had already suffered a substantial loss.

Trust Company presented evidence revealing its staff reviewed the estate's holdings on five different occasions and decided the portfolio should not be liquidated until the advent of a more favorable market. Although this event never materialized, Trust Company's representatives testified the decision to retain the stocks was based on: (1) conservative nature of the portfolio, (2) declining interest rates in late 1973, (3) a slight market recovery in January, 1974, and (4) advice from Harris.

Two of these factors have been considered by other courts in determining whether an executor should be held individ-

ually liable for similar estate losses. The California Supreme Court noted an executor's attempts to ascertain market information through the research facilities of its own investment department supported an assertion of due care under existing circumstances. *Estate of Beach, supra.* Here, Trust Company not only utilized internal research facilities, but also solicited opinions from a reputable security analyst.

Another factor which has received judicial attention is the type of securities in a fiduciary's possession. A New York court held it was not unreasonable for executors to hold stocks for a period of one year in light of the conservative nature of the involved portfolio. In so holding that court stated, "[s]tocks of this character ought not be timidly and hastily sacrificed." *In re Winburn's Will*, 140 Misc. 18, 249 N.Y.S. 758, 762 (Sur.Ct.1931).

Objector introduced no evidence tending to contradict Trust Company's testimony to the effect testator's portfolio was of a conservative nature. Thus, the *Bayles* and *Campbell* cases, urged upon us by objector, are easily distinguishable as involving speculative securities with histories of drastic value fluctuations.

Nothing is gainsaid by objector's evidence disclosing the stocks had a ready market and could be converted into cash in about ten days time. Liquidation was not a problem for Trust Company. Sale at a price sufficient to recoup losses unavoidably suffered by the estate was its dilemma.

Finally, objector would have us hold the instant portfolio should have been liquidated in January, right in the middle of a brief upswing in the market. Logic dictates the opposite reaction. Trust Company could have reasonably concluded the market was then on its way back up. An election to sell then would have been imprudent.

The burden to show wrongful conduct which suffices to surcharge a fiduciary is upon those so asserting. *In re Estate of Lundvall*, 242 Iowa 430, 435–436, 46 N.W.2d 535, 538 (1951); *In re Will of Carson*, 227 Iowa 941, 955, 289 N.W. 30, 36–37 (1939);

*In re Estate of Ellis*, 460 Pa. 281, 333 A.2d 728, 730 (1975); Iowa R.Civ.P. 344(f)(5). This is a matter requiring proof of the questioned circumstances and conduct of the fiduciary which warrants holding it liable for damages. *Matter of Estate of Meister*, 71 Wis.2d 581, 239 N.W.2d 52, 56 (1976).

Objector failed to meet this burden. Item IV of testator's will vested in Trust Company that discretion which "prudent" persons would exercise under the same or similar circumstances. We find no breach of any right, power, or duty upon which to hold this fiduciary liable. Trial court erred in entering judgment for objector.

Costs on appeal are taxed to the Maude Popp Wiese estate.

REVERSED.