**In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Ted L. LIGGETT (also known as T.L. Liggett) and Clara Liggett, husband and wife.**

**Appeal of Samuel R. COX.**

**No. 2–67768.**

Court of Appeals of Iowa.

Oct. 28, 1982.

As Corrected Nov. 8, 1982.

Glen M. Bradley, Sigourney, for appellant.

Richard D. Hoadley, Fairfield, for the wards.

SNELL, Judge.

In December 1979 Ted L. Liggett and Clara Liggett, husband and wife, filed a voluntary petition for appointment of a conservator and guardian. Samuel R. Cox, appellant, was subsequently appointed to serve as conservator and guardian for the Liggetts. At the time of appointment, the Liggetts were in their early seventies and the couple owned some farm land. Ted Liggett has been in the farming business all his life and the couple appeared to be in normal health.

In February 1981, Cox applied for court permission to be compensated for services rendered the wards. A court order entered in March 1981 approved the application and Cox was awarded approximately $2600.

The Liggetts filed an application to terminate the conservatorship and guardianship in August 1981, which the court granted the following month. On October 12, 1981, Cox submitted a final report and requested fees of $17,676.43 for services rendered during the conservatorship and guardianship. After notice and hearing, the court denied Cox's fee claim of $17,676.43 and in addition ordered Cox to return the $2600 awarded in March 1981. From this ruling Cox appealed.

## I. Scope of Review

Iowa Code § 633.10(3) provides that "[t]he district court sitting in probate shall have jurisdiction of ... the administration, settlement and closing of conservatorships and guardianships." Section 633.33 then provides:

Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.

The instant case does not involve a will contest, the involuntary appointment of guardian and conservators, or the establishment of contested claims. Thus, as provided by section 633.33, the present action is one in equity. An action in equity is reviewed de novo. Iowa R.App.P. 4. Our review will accordingly be so conducted. *See also In re Simon's Estate,* 288 N.W.2d 549, 551 (Iowa 1980) (appeal involving propriety of amount of fee allowed executor reviewed de novo); *In re Wiese's Estate,* 257 N.W.2d 1, 3 (Iowa 1977) (trial court's determination on objection to executor's final report reviewed de novo); *In re Guardianship of Sams,* 256 N.W.2d 570, 572 (Iowa 1977) (proceeding to terminate guardianship and conservatorship reviewed de novo); *In re Wilson's Estate,* 202 N.W.2d 41, 42 (Iowa 1972) (guardian-conservator's challenge to trial court's order involving administrative costs, fees, and expenses reviewed de novo).

## II. Denial of March 1981 Claim

### A. Procedure

The record reveals that the March 1981 order awarding $2600 to Cox was obtained without notice and hearing. This order was subsequently in substance set aside by another judge reviewing the final report and fee claim in October 1981. Cox claims that this "reversal" is error because "[t]here is no authority under the Rules of Civil Procedure or the Probate Code for one Trial Court Judge to set aside a claim approved by another Trial Court Judge."

Iowa Code § 633.36 (1981) provides that "[a]ll orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those who have appeared without notice." *See generally In re Myers' Estate,* 269 N.W.2d 127, 128 (Iowa 1978) (trial court's order fixing executor's fees was final and appealable with respect to executor who had notice). However, "[a]ll orders entered without notice or appearance are reviewable by the court at any time prior to the entry of the order approving the final report." Iowa Code § 633.37 (1981). In the case at bar, the guardian-conservator's final report was filed on October 12, 1981. On October 22, 1981, the probate court after hearing ordered the guardian-conservator to return the $2600

awarded him by the March 1981 order.[1] Cox's final report was then approved on October 29, 1981.[2] The October 22, 1981, order that "reversed" the March 1981 ex parte order was entered before approval of the final report and was therefore proper and permissible under section 633.37. Cox's argument is without merit.

### B. Denial of Claim

■ Iowa Code § 633.661 (1981) provides in part:

> If the conservator is a creditor of the ward, he shall file his claim as other creditors, and the court shall appoint some competent person as temporary conservator to represent the ward at the hearing on the conservator's claim.

In the instant case, the court in issuing its ex parte March 1981 order did not appoint "some competent person as temporary conservator to represent the ward at the hearing on the conservator's claim" as required by section 633.661. We therefore agree with the trial court that failure to follow the section 633.661 procedure requires Cox to restore $2600 to the wards. To hold otherwise would render section 633.661 inoperative and be contrary to legislative mandate. The trial court's order is therefore affirmed.

### III. Compensation

■ Cox's final report contains, *inter alia,* a notebook with approximately one hundred hand-written pages detailing his activities from December 11, 1979, to October 8, 1981. The report claims that $17,-676.43 is due Cox for services as the Liggetts' conservator and guardian. The trial court denied Cox's claim in its entirety, finding that Cox has "cajoled, threatened, frightened, bullied, and abused two fine elderly persons" and that Cox has willfully, recklessly, and in bad faith mismanaged the

wards' property. Cox contends that the trial court's ruling was arbitrary and unreasonable and that he is entitled to the full amount claimed.

Iowa Code § 633.200 (1981) provides that "[t]he court shall allow and fix from time to time compensation for fiduciaries . . . for such services as they shall render." *See also* Iowa Code § 633.3(17) (1981) ("fiduciary" includes guardian and conservator); *id.* § 633.162 (court may diminish amount of fee due if fiduciary violates Probate Code).

39 Am.Jur.2d Guardian and Ward § 184 provides that:

> "A guardian who has faithfully and honestly discharged the duties of his trust usually is entitled to compensation from the ward's estate for his services. . . . However, in the discretion of the court, if a guardian has been guilty of negligence, . . . of dishonesty or bad faith in administering his trust, the disallowance of any compensation is proper in addition to whatever liability for losses he may have incurred. . . ."

76 Am.Jur.2d Trusts § 547 provides that: "Willfulness and bad faith in misconduct are grounds for completely depriving a fiduciary of compensation, and recklessness or gross negligence; without intentional violation of duties, effecting serious loss to the estate, justifies a Court's denial of compensation to a trustee. *To allow compensation under such circumstances would be to put a premium to recklessness and negligence.*" (emphasis added).

In addition, the Iowa Supreme Court in *In re Guardianship of Anderson,* 208 Iowa 191, 225 N.W. 258 (1929), held that the guardian had mismanaged the ward's estate to the extent that the appellate court was not warranted in interfering with the trial court's discretion in denying him compensa-

---

1. In the appendix Cox designated that the order directing him to restore $2600 to the wards' estate was entered on October 29, 1981. Our examination of the trial court papers reveal that the order was entered on October 22, 1981, not October 29, 1981, as indicated in the appendix.

2. In the appendix Cox designated that the order approving the final report was entered on October 22, 1981. Our examination of the trial court papers reveals that the order was entered on October 29, 1981, not October 22, 1981, as indicated in the appendix.

tion for his services. *Id.* at 196, 225 N.W. 258. *See Turner v. Ryan,* 223 Iowa 191, 203, 272 N.W. 60 (1937); *Booth v. Bradford,* 114 Iowa 562, 572, 87 N.W. 685 (1901) (trustee who neglects duties, is guilty of bad faith, or violates obligations forfeits his right to compensation. In *In re Estate of Rorem,* 245 Iowa 1125, 66 N.W.2d 292 (1954), the supreme court quoted the Restatement of Trusts as follows: "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." *Id.* at 1140.

Applying the aforestated general principles, the trial court found:

In connection with Sam Cox's fees, this Court is appalled at this Conservator's gall in demanding to be paid the sum of $17,676.43 for which he accomplished essentially nothing. Mrs. Liggett testified at the hearing on September 30th that she begged Cox to forget about the Vande Kieft judgment and the Smith collection, believing that they would cost far more to collect than they could ever recover. Cox ignored her pleas. How prophetic she in fact was. In order to try to collect thses [sic] stale accounts totaling some $10,000. Cox has had the impudence to run up his own bill of more than $17,000, Ball's bill for some $5,700 and other attorneys' fees shown in the final report that are not specified. He has fought Liggetts' wish to end this Conservatorship, causing them to incur still more legal fees. During the period of Cox's ministration, the Liggetts' cash on hand has been reduced by some $6,000. Cox has incurred administrative costs of more than $23,000. There is no showing that any income was produced during the period of the Conservatorship by Cox. Rather, the evidence shows that virtually all of what little income that was produced during the period of the Conservatorship was through the efforts of Mr. Liggett himself in his won sale of his Conklin products . . . He has stirred up old long forgotten debts—which may or may not be ultimately collectible—as an excuse to maintain his control over those few possessions they yet own . . . Cox's mismanagement is so gross as to be *reckless, will ful* [sic], and done in *bad* faith. The Court therefore finds that Cox should not be entitled to any compensation for any of his "services" or reimbursement for any of his "expenses" during the administration of this Conservatorship. To do otherwise would reward his reckless acquisitive behavior and encourage him to continue unnecessarily meddling in the affairs of others.

In our de novo review, we give weight to the trial court's findings, especially when the demeanor of witnesses and their credibility are of great importance. Iowa R.App. 14(f)(7). This is such a case. Accordingly, we find the trial court's decision that Cox's actions amounted to bad faith is substantiated by the record. The decision is affirmed.

AFFIRMED.