# IN THE COURT OF APPEALS OF IOWA

No. 15-1122
Filed July 27, 2016

IN THE MATTER OF THE ESTATE OF
HENRY MYSAK, Deceased.

TROY MYSAK, as Executor of the Estate
of Stephen Mysak, and DIANNE BROWN,
Beneficiaries/Appellants

v.

Dixie Brady,
Beneficiary/Appellee

US BANK, N.A.,
Executor/Appellee.

_____

Appeal from the Iowa District Court for Linn County, Christopher L. Bruns, Judge.

Beneficiaries appeal from an order of disposition regarding their father's estate. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for appellants.

Guy P. Booth, Cedar Rapids, for appellees Estate of Henry Mysak.

Kerry Finley, Cedar Rapids, for appellee Dixie Brady.

Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

This is an appeal from the administration of the Estate of Henry Mysak. Henry Mysak's children—Stephen Mysak (now deceased), Diane Brown, and Dixie Brady—were appointed co-executors of his estate. When it became apparent the children would have disputes regarding the distribution of property of the estate, they moved for appointment of a new executor, US Bank, which was granted. Stephen and Dianne appeal from a ruling on US Bank's proposed disposition of the estate's assets.

Review of this equitable action is de novo. *See* Iowa Code § 633.33 (2015); Iowa R. App. P. 6.907. We are not bound by the district court's findings of fact or conclusions of law, but we do give weight to the district court's credibility determinations. *See* Iowa R. App. P. 6.904(3)(g); *In re Estate of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004).

Henry Mysak died testate on October 6, 2011. His will provided for the disposition of his personal and real property. The will gave Stephen the option to purchase Henry's interest in fifty-six acres of farmland Henry and Stephen owned as tenants in common and farmed together. The will provided a process for Stephen to exercise the option, including a process to determine the value of the property. The will gave Dianne the option to purchase "[Henry's] home and acreage at 674 Dubuque Road, Springville, Iowa 52336, including approximately 3.9 acres of land, together with the home located thereon, and all buildings." As with Stephen's option, the will set forth a process for exercising the option and valuing the property. Henry also bequeathed to Dianne "any horses, including

mares and colts, together with any equipment and personal property that is used with regard to those horses."

We first address Stephen's claims. Stephen exercised his option to purchase the farmland in March 2012. The sale did not close until 2014. Stephen farmed the property during this time period, and the district court ordered Stephen to pay cash rent for the 2012 and 2013 crop years. Stephen contends this was error. Stephen contends Dixie and the executor caused the delay in valuing and closing on the property. He should not be required to pay rent, he contends, when he was ready, willing, and able to close on the property. Unsurprisingly, the executor and Dixie blame Stephen for any delay. At this point, who caused the delay and why is immaterial to the resolution of this claim.

> During the period of administration, the personal representative shall take possession of the decedent's real estate, except the homestead and other property exempt to the surviving spouse. Every personal representative shall take possession of all the personal property of the decedent, except the property exempt to the surviving spouse. The personal representative may maintain an action for the possession of such real and personal property or to determine the title to any property of the decedent. Until property is distributed, the personal representative shall take reasonable steps to safeguard such property, pay any expenses related to such property, and collect any income generated by such property. Unless otherwise provided by the decedent's will, all such expenses shall be paid from the residuary estate and all such income shall be considered a part of the residuary estate.

Iowa Code § 633.351. Pursuant to section 633.351, the executor took possession of Henry's interest in the property and was obligated to collect income generated by the property. Under the circumstances, we conclude the district court did not err in requiring Stephen to pay the estate for the time he farmed the property prior to closing on the same.

Stephen contends the district court erred in determining the amount to be paid for the time period in question. We agree. A tenant in common has the right to possession and use of the land as a whole. *See In re Estate of Rogers*, 473 N.W.2d 36, 40 (Iowa 1991). A tenant in common is not required to pay rent to cotenants for his use of the land. *See Van Veen v. Van Veen*, 238 N.W. 718, 720 (Iowa 1931). There are some exceptions to the general rule; however, it appears only one exception applies. A tenant in common has "the right to cultivate the land and to harvest crops from it. However, a crop grown on such land is common property." 86 C.J.S. *Tenancy in Common* § 22 (2006). Here, as a tenant in common, Stephen had the right to farm the property without paying cash rent. However, the estate had an interest in the crop as common property. We thus conclude the determination of liability should be done on a crop share basis rather than a cash rent basis. Stephen failed to provide information regarding the 2012 and 2013 crop. The estate's expert provided several different estimates. Based on the expert's estimates regarding input costs and average yields, we find and conclude Stephen should be required to pay $7083.47 and $11,296.96 for the estate's share of crops for crop years 2012 and 2013, respectively.

We next address Dianne's claims. Dianne argues the trial court erred in failing to award her certain equipment and personal property used to care for the horses she inherited. The will provided "I give and bequeath any interest I have in any horses, including mares and colts, together with any equipment and personal property that is used with regard to those horses, to my daughter, Dianne L. Brown, if she survives me." Dianne prepared a list of property she

contended she used "with regard to those horses." Neither Stephen nor the executor objected to Dianne's property list. The district court declined to distribute to Dianne certain items on the list based on the district court's personal experience with horses and belief that some of the items were not typically used to care for horses. The district court's personal experience regarding the equipment typically used to care for horses was not at issue however. In determining what "equipment and personal property that is used with regard to those horses" means, the intent of the testator is key. *See Elkader Prod. Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 237 (Iowa 1977) ("It is well settled, in cases such as this, . . . testator's intent is the polestar and if expressed shall control. . . ."). At trial, Dianne's testimony supported the finding that she used and her father knew she used the requested property to care for the horses with the exception of the Dixon lawn mower and buckboard. Her testimony, and the executor's recommendation regarding disposition of the property, supports the conclusion that Dianne should receive all the items she requested except the Dixon lawn mower and the buckboard.

Finally, Dianne contends the district court erred in requiring her to pay $140,000 to purchase Henry's home and acreage. Her argument is an equitable one related to the manner in which Stephen exercised his option to purchase the farmland. During the administration of the estate, Stephen and Dianne stipulated that neither of them would require the other to pay the other's interest in the estate with respect to exercising the option. In other words, to exercise his option, Stephen was required only to pay one-third of the purchase price to satisfy Dixie's one-third interest in the property. During the administration of the

estate, to facilitate the closing of Stephen's purchase of the farmland, the executor agreed to the arrangement with respect to Stephen's property on the condition Stephen pay an additional $20,000 to provide the estate with greater liquidity. Stephen did so, and the district court approved the sale. Dianne contends that she should be entitled to pay only one-third of the $140,000 purchase price because Stephen was allowed to do so. While the argument has some appeal, it is unavailing. First, the will sets forth the process for Dianne to exercise her option and the process for determining the value of the property. While the parties may have stipulated to a different arrangement with respect to Stephen's property, the district court's order with respect to Dianne is in accord with the will. Second, at trial, the executor took the position that circumstances had changed since Stephen closed on the property and that Dianne should pay the full price to "make sure that we have enough money to make this estate cash flow and that is the only and best way to do it." The executor identified potential claims against the estate, including a Medicaid claim, an income tax claim arising out of Henry's failure to file income tax returns for several years, and the executor's extraordinary fees. It is the executor's duty in administering the estate to ensure that creditors, taxes, and expenses are paid. *See In re Wiese's Estate*, 257 N.W.2d 1, 4 (Iowa 1977) ("An executor usually collects decedent's personal property, reduces it to cash so far as is necessary, pays expenses, taxes and creditors, then effects distribution to devisees."). Thus, under the circumstances, we affirm the district court with regard to Dianne's purchase of Henry's home and acreage.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. We remand this matter for further orders and proceedings not inconsistent with this opinion. We do not retain jurisdiction over this matter.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**