DECISION
This controversy concerns the Estate of Magda Burt ("the estate") which remains the subject of ongoing proceedings in the Probate Court of the City of Warwick, Rhode Island. At all times relevant to this case, Fleet National Bank ("Fleet")[1] and Robert Gates have been co-executors of the estate (collectively "executor defendants"). At the time of her death, Magda Burt was an officer and director of Nyman Manufacturing Company ("Nyman"), and she was its largest shareholder. Nyman, a closely held corporation, was founded in 1936 by John Nyman and, until 1997, was owned and managed by members of the Nyman family. Nyman's articles of incorporation authorized the issuance of 13,500 shares of Class A non-voting stock and 1,500 shares of Class B voting stock. At all times relevant herein, Robert Nyman, Kenneth Nyman, and Keith Johnson (collectively "Nyman defendants") were officers, directors, and/or shareholders of Nyman. Before the events leading to the present litigation, defendants Robert Nyman and Kenneth Nyman had inherited all of the issued and outstanding shares of Class B voting stock; each owned 375 of those shares. Other members of the extended Nyman family owned various amounts of the issued Class A nonvoting stock.
Magda Burt passed away in 1987. At the time of her death, she owned 2,256 shares of Class A nonvoting stock which became part of her estate. Through her will, admitted to probate in Warwick, Rhode Island, she appointed Fleet and Robert Gates as co-executors of her estate. Roland Burt and Raymond Cyr (collectively "plaintiffs") are among ten residuary beneficiaries named in Magda Burt's will, and, as such, both claim entitlement to one-tenth of the 2,256 shares held by the estate.
With regard to the estate's shares, however, Magda Burt's will provided:
 If I am the owner of any stock in the Nyman Manufacturing Company at the time of my death, I hereby direct my executors to offer all such stock to said Nyman Manufacturing Company for sale at the lowest price for which they are willing to sell it and to make no sale at any lower price without first offering such stock to said company, this same condition to be imposed upon my trustee if such stock becomes an asset of any trust.
(Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. A ¶ 10.) The executors of Magda Burt's estate twice attempted to have Nyman redeem the estate's shares in accordance with the terms of her will, in 1989 and again in 1993. The Nyman defendants assert that the corporation was financially unable at those times to redeem the shares. In January of 1994, Nyman hired Keith Johnson to guide Nyman out of its financial difficulties, and, within a year, Nyman's financial situation markedly improved.
As Nyman's economic vitality was improving, according to the plaintiffs, Nyman started acquiring all of its outstanding shares of stock in order to sell the business to an outside party. The Nyman defendants dispute the assertion that a sale of the corporation was planned at the time that Nyman was reacquiring the stock.
In August of 1995, the Nyman defendants negotiated the purchase of the estate's 2,256 shares of Class A stock at the price of $145.36 per share. The executor defendants transmitted Nyman's offer to the ten residuary beneficiaries along with forms for them to indicate whether they approved the terms of the sale, noting that a failure to respond would be considered consent. (Robert Tyler Aff. ¶ 6.) The record contains evidence that the executors sent notice of the proposed sale to the ten residuary beneficiaries. (Robert Tyler Aff. Ex. F.) Five of the residuary beneficiaries — plaintiff Raymond Cyr, Beverly Keipler, Judith Lawton, David Gilmore, and Janice Leffingwell — signed and returned the forms to the executors indicating that they approved the sale.[2] Only one residuary beneficiary, Carol Lawton, returned the form to indicate her disapproval of the sale. (Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. E.) Roland Burt, as well as three other residuary beneficiaries, did not return the forms to otherwise indicate their approval or disapproval of the proposed sale. (Robert Tyler Aff. ¶ 7.)
The executors, faced with a lack of unanimity among the beneficiaries and in light of a suit filed by Roland Burt against the executors,[3] petitioned the Probate Court for an order to distribute that stock to the residuary beneficiaries so that the beneficiaries could decide individually whether to sell their shares. (Robert Tyler Aff. Ex. E; see also Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. C.) After a hearing at which most of the beneficiaries were present, including the plaintiffs and plaintiff Burt's counsel (Robert Tyler Aff. ¶ 10), Probate Court Judge Mary E. McCaffrey denied the petition and ordered the executors to sell the estate's shares to Nyman according to the terms of its offer. Id. at Ex. G. The Probate Court ordered the executors to distribute part of the proceeds of the sale of stock to the residuary beneficiaries and to deposit the balance of the proceeds in the registry of the Probate Court. Id. There is no evidence in the record that the plaintiffs appealed this order to the Superior Court.[4] Nyman redeemed the estate's shares on November 6, 1995. That same day, the Nyman defendants voted to give themselves options to purchase the 2,256 shares at a price of $145.36 per share.
According to the plaintiffs, Roland Burt and others objected to the sale, requesting that their inherited stock be retained and that a proper appraisal be made. (Roland Burt Aff. ¶¶ 2-3) Plaintiffs claim that the Probate Court ordered the sale of stock without a petition or prior notice to them. (Id. ¶ 4) The plaintiffs have submitted no evidence, however, that they objected to the Probate Court's order prior to the sale. Among the papers submitted to this Court is a petition filed by Roland Burt with the Probate Court in 1997, approximately two years after the sale of the estate's shares to Nyman. (Mem. of Law in Supp. of Defs. Robert C. Nyman, Kenneth J. Nyman, Keith Johnson, and Nyman Mfg. Co.'s Opp. to Pls.' Mot. for Partial Summ. J. Ex. 2.) In this petition, Roland Burt alleged that the true value of the estate's shares had never been determined; that the sale was compromised by a conflict of interest; and that the executors had submitted a flawed accounting. Id. The Probate Court denied this petition on April 3, 1997, rejecting Roland Burt's request for an independent appraisal on the grounds that his objection to the First and Final Account was untimely and, therefore, not properly before the court. Id. There is no evidence before this Court that Roland Burt appealed to the Superior Court, pursuant to R.I. Gen. Laws § 33-23-1, from the Probate Court's decree denying his petition.
In 2002, Roland Burt asked the Probate Court to review and reconsider the valuation, sale, and liquidation of the estate's shares in light of the alleged breach of fiduciary duty and fraudulent conduct by the executors. (Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. H.) The Probate Court denied this petition with prejudice on March 25, 2002. Id. at Ex. I. Thereafter, Roland Burt filed in the Providence County Superior Court a claim of appeal on April 12, 2002 and his reasons for the appeal on May 1, 2002.[5] A motion justice of this Court found that jurisdiction did not reside in Providence County and, on March 18, 2003, ordered that the case be removed from the trial calendar in Providence County, transferred to Kent County and held in abeyance pending further resolution by counsel and the court. Id. at Ex. L; Burt v. Gates, C.A. No. PP 02-2316 (R.I.Super.Ct. 2002) (Order dated March 18, 2003). Notwithstanding that court order, the file in that case has not been transferred to Kent County and reveals no further action since entry of the order. Also in 2002, Roland Burt, this time joined by Raymond Cyr, filed the case presently before this Court, which is not an appeal from a Probate Court order pursuant to R.I. Gen. Laws §33-23-1 but, rather, is an action against the executors of Magda Burt's estate and the Nyman defendants for alleged misconduct in the handling of the sale of the estate's shares.
In the instant suit, in their Sixth Amended Complaint, the plaintiffs allege that the Nyman defendants breached their fiduciary obligations by withholding or misrepresenting information pertaining to Nyman's 1995 and/or 1996 profits, by misrepresenting their intentions to sell the business, and by failing to make full disclosure and fair valuation to plaintiffs according to the by-laws of Nyman. (Pls.' Sixth Am. Complaint ¶¶ 24, 34) The plaintiffs also claim that both the Nyman defendants and the executor defendants breached their fiduciary duties to the plaintiffs by failing to obtain an independent appraisal of Nyman and, instead, allowing the estate's shares to be sold at a price well below their true value. (Id. ¶¶ 25, 33) Additionally, the plaintiffs allege that the executor defendants breached their fiduciary duties by failing to bring an action against the Nyman defendants or to take any other action to seek relief for the substantial dilution in value of the stock at issue. (Id. ¶¶ 43, 45) Plaintiffs seek compensatory and punitive damages against all named defendants. (Id. ¶ 47 and ad damnum clause).
 MOTIONS FOR SUMMARY JUDGMENT
All parties to this action have filed summary judgment motions. The plaintiffs have moved for partial summary judgment on their claim that the executor defendants breached their fiduciary duties to the plaintiffs by failing to investigate the price Nyman paid for the estate's shares. The plaintiffs also have moved for summary judgment on their claim that the Nyman defendants withheld or misrepresented material information about the status of Nyman and the true value of the company's stock, thereby breaching their fiduciary duties to the plaintiffs and unjustly enriching themselves. Both the executor defendants and the Nyman defendants oppose the respective motions.
The executor defendants have moved for summary judgment on grounds that this Court lacks subject matter jurisdiction over the controversy. In the alternative, the executor defendants argue that they have fully satisfied their fiduciary obligations to the plaintiffs and that the plaintiffs' claims are barred by the doctrines of res judicata and laches. The Nyman defendants also have moved for summary judgment, averring that this Court lacks subject matter jurisdiction over the plaintiffs' complaint. Furthermore, the Nyman defendants maintain that the corporation owed no fiduciary duty to the plaintiffs and, as such, the plaintiffs' claim against it must fail as a matter of law. This Court will address the parties' arguments in seriatim.
 STANDARD OF REVIEW
A court may grant summary judgment where no genuine issue of material fact exists and the moving party is, therefore, entitled to judgment as a matter of law. Goncalves v. NMU Pension Trust,818 A.2d 678, 682 (R.I. 2003). When faced with a motion for summary judgment, the only question before the trial justice "is whether there is a genuine issue as to any material fact which must be resolved." Golderese v. Suburban Land Co.,590 A.2d 395, 396 (R.I. 1991) (quoting Rhode Island Hosp. Trust Nat'lBank v. Boiteau, 119 R.I. 64, 66, 376 A.2d 323, 324 (1977)) (citations omitted). "When determining whether any genuine issue of material fact exists, the trial justice . . . views the pleadings, affidavits, and other relevant documents in the light most favorable to the opposing party." Mullins v. Federal DairyCo., 568 A.2d 759, 761 (R.I. 1990). The non-moving party "bears the burden of proving, with competent evidence, the existence of a factual dispute." Trend Precious Metals Co. v. Sammartino,Inc., 577 A.2d 986, 988 (R.I. 1990). The trial justice is not to consider the weight or credibility of the evidence. Mullins,568 A.2d at 761.
 EXECUTOR DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
A challenge to subject matter jurisdiction questions the Court's authority to adjudicate the controversy before it. Pinev. Clark, 636 A.2d 1319, 1321-22 (R.I. 1994). "It is an axiomatic rule of civil procedure that such a claim may not be waived by any party and may be raised at any time in the proceedings." Id. (citing La Petite Auberge, Inc. v. RhodeIsland Comm'n for Human Rights, 419 A.2d 274, 280 (R.I. 1980); Super. Ct. R. Civ. P. 12(b) (h)). As the issue of subject matter jurisdiction is a threshold one, it must be addressed before reaching the merits of a controversy. Id.
The executor defendants argue that because the plaintiffs' claims relate to the administration of a will and an estate, they are necessarily subject to the exclusive jurisdiction of the Probate Court. They claim that the central issue in the underlying dispute is whether the Probate Court's order was proper — an issue within the exclusive jurisdiction of the Probate Court. Because the plaintiffs neither objected to nor appealed the order, and because this Court has only appellate jurisdiction over probate matters, the executor defendants argue that this Court lacks subject matter jurisdiction over the plaintiffs' claims and should enter summary judgment in their favor.
The plaintiffs contend that, because the Probate Court is one of limited jurisdiction, its jurisdiction must be narrowly construed. They assert that the executor defendants' contention that the Probate Court has jurisdiction over all claims of negligence and fiduciary breaches against an executor would result in an "absurdity," as such an interpretation would give the Probate Court exclusive jurisdiction over any claim brought by a beneficiary against an executor, such as one for personal injury. (Pls.' Mem. Regarding the Cross Mots. for Summ. J. Between the Pls. and the Executor Defs. p. 4-7) In addition, the plaintiffs maintain that, should such an argument be adopted, the only way to challenge the executors' actions with respect to the sale of the stock would have been to appeal the Probate Court's 1995 order, a proposition recently rejected in a decision by Justice Thompson in related Superior Court litigation. SeeKiepler v. Gates, C.A. No. KP 98-0337 (R.I.Super.Ct. 1998) (Order dated Feb. 25, 2005). The plaintiffs suggest thatKiepler instructs that an appeal of the 1995 order only could have addressed the sale of the stock and not the conduct of the executors.[6]
A review of relevant precedent suggests that the issue at hand is one that has not been clearly settled in Rhode Island or elsewhere. The jurisdiction of Rhode Island's probate courts is set forth, by statute, as follows:
 Every probate court shall have jurisdiction in the town or city in which it is established of the probate of wills; the granting of administration, the appointment of custodians, of administrators, of guardians of persons and estates, or of persons only or of estates only, and of conservators; the accepting and allowing of bonds, inventories, and accounts of executors, administrators, and guardians; the granting of leave to sell at public or private sale, or to mortgage property, as hereinafter provided; of the making of partition of the real estate of deceased persons; of the adoption of persons eighteen (18) years of age or older; of change of names of persons; of the removal or filling of a vacancy of a trustee of any trust established under a will, or the termination of such trust; of setting off and allowing real estate and personal property to widows and surviving husbands; and of all other matters now within the jurisdiction of probate courts. The court shall have power to accept the resignation of, or to remove, any custodian, executor, administrator, or guardian, or any other person appointed by the court, and also power to do and transact all matters and things incidental to the jurisdiction and powers vested in probate courts by law.
R.I. Gen. Laws § 8-9-9. As such, probate courts in Rhode Island are courts of limited jurisdiction and can "exercis[e] jurisdiction only in a manner and to the extent conferred by statute." Carr v. Prader, 715 A.2d 291, 293 (R.I. 1999).
In light of the above, Rhode Island courts of general jurisdiction — such as this Court — have been largely precluded from adjudicating cases even tangentially concerning the administration of a probate estate. See, e.g., Dugdale v.Chase, 52 R.I. 63, 64, 157 A. 430, 431 (1931) ("[t]he probate court has exclusive original jurisdiction in matters relating to the probating of wills"); Donato v. BankBoston,
110 F. Supp. 2d. 42, 45 (D.R.I. 2000) (citations omitted) (concluding that Rhode Island law affords the Superior Court appellate jurisdiction only over claims related to the handling of wills and/or estates, and, therefore, a breach of trust claim against executors "could not have originally been brought in Rhode Island Superior Court"). While the above referenced cases are still good law in this jurisdiction, a recent United States Supreme Court decision — discussed at length below — indicates that the prevailing posture on this issue will be different henceforth.
Although not raised or discussed by the parties to this case, the jurisdictional scope prescribed by the General Assembly for probate courts in Rhode Island is essentially the same creature as that found within the federal common law, regularly referred to as the "probate exception" to federal jurisdiction. Lepard v.NBD Bank, 384 F.3d 232, 237 (6th Cir. 2004). "The probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court." Id.
(quoting Cenker v. Cenker, 660 F. Supp. 793, 795 (E.D. Mich. 1987)). Since its inception,[7] "the scope of the exception has not been established definitively." Georges v. Glick,856 F.2d 971, 973 (7th Cir. 1988); see also Dragan v.Miller, 679 F.2d at 713 ("[t]he probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction").
While some courts have applied the exception narrowly, excluding matters not directly related to the probate of a will or administration of an estate, others have endeavored to adopt an expansive application. Compare Rienhardt v. Kelly,164 F.3d 1296, 1301 (10th Cir. 1999) (claims of undue influence exerted upon decedents affecting the ultimate disposition of a probate estate deemed "enforceable in a state court of general jurisdiction") and Georges v. Glick, 856 F.2d at 974 (probate exception does not apply to claim for attorney malpractice in preparing inter vivos trust related to estate) with Mangieriv. Mangieri, 226 F.3d 1, 3 (1st Cir. 2000) (affirming district court decision dismissing for lack of subject matter jurisdiction a breach of fiduciary duty claim against executor because the claim "would improperly interfere with a probate proceeding") and Golden Ex Rel. Golden v. Golden,382 F.3d 348, 357, 360 (3rd Cir. 2004) ("[t]he probate exception extends both to matters of `pure' probate and to matters `ancillary' to probate," and, therefore, claims against executor alleging undue influence, forgery, and breach of fiduciary duty are subject to the exception as they "would interfere with the already-completed probate proceedings").
Given the long-standing ambiguity shrouding the scope of the probate exception, the United States Supreme Court recently undertook to clarify the issue with some degree of finality. InMarshall v. Marshall, 126 S. Ct. 1735 (2006), the Court held that federal jurisdiction was proper in an action by a decedent's widow alleging that the decedent's son tortiously interfered with an expected gift.[8] Pertinent to this case, the United States Supreme Court purported to explicate its previous treatment of the probate exception, wherein it had held that "federal courts of equity have jurisdiction to entertain suits . . . so long as the federal court does not interfere with the probate proceedings." Marshall v. Marshall, 126 S. Ct. at 1747
(quoting Markham v. Allen, 326 U.S. at 494)) (citation omitted). It noted that lower federal courts have interpreted this language to block federal jurisdiction over an assortment of matters "well beyond probate of a will or administration of a decedent's estate" such as claims for breach of fiduciary duty against executors and trustees. Marshall v. Marshall,126 S. Ct. at 1748 (citing as examples, among other cases, Mangieri,226 F.3d at 2-3 (breach of fiduciary duty by executor); Golden,382 F.3d at 360-62 (same) and Lepard v. NBD Bank,384 F.3d 232-237 (6th Cir. 2004) (breach of fiduciary duty by trustee)). The Supreme Court then clarified that "the `interference' language in Markham" was meant merely to reiterate "the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Id. In doing so, it implied that decisions such as Mangieri and Golden,
wherein the First and Third Circuits, respectively, found jurisdiction wanting based on the probate exception with respect to claims filed against executors for breach of fiduciary duty, would be decided differently post-Marshall. Accordingly, the Supreme Court reversed the decision by the Ninth Circuit Court of Appeals, holding that the probate exception did not bar federal jurisdiction over the tortious interference suit. Id. at 1748-50.
In this case, the plaintiffs have alleged that the executor defendants breached their fiduciary duties to the plaintiffs as beneficiaries of Magda Burt's estate by failing to obtain an independent appraisal of Nyman and, instead, allowing the estate's shares to be sold at a price well below their true value. (Pls' Sixth Am. Complaint ¶¶ 25, 33) Additionally, the plaintiffs allege that the executor defendants breached their fiduciary duties by failing to bring an action against the Nyman defendants or to take any other action to seek relief for the substantial dilution in value of the stock at issue. (Id. ¶¶ 43, 45) Like the claim of the decedent's widow in Marshall, the plaintiffs' claim "does not `involve the administration of an estate, the probate of a will, or any other purely probate matter.'" Marshall v. Marshall, 126 S. Ct. at 1748.[9]
Rather, as tortious interference is "a widely recognized tort," long-accepted as being within the jurisdiction of the federal courts, so is breach of fiduciary duty a well-established cause of action within the jurisdiction of the Rhode Island Superior Court. Id.; see also Bogosian v. Woloohojian RealtyCorp., 323 F.3d 55, 61, n. 4 (1st Cir. 2003) (citing In reEvangelist, 760 F.2d 27, 29 (1st Cir. 1985)) ("a claim of `breach of fiduciary duty' has long been recognized as an equitable cause of action"); R.I. Gen. Laws § 8-2-13 ("[t]he superior court shall, except as otherwise provided by law, have exclusive original jurisdiction of suits and proceedings of an equitable character").
Furthermore, the plaintiffs are seeking an in personam judgment against the executor defendants as well as the Nyman defendants.[10] As such, the damages remedy sought is entirely distinct from the probate res, and the plaintiffs' suit is, therefore, cognizable in the Superior Court. Cf. Starr v.Lillie, 421 F.2d 999, 1001, 1006 (6th Cir. 1970) (suit seeking, inter alia, construction of a will and delivery of certain assets deemed improper for federal court because "to grant the relief prayed for would . . . interfere with the prior jurisdiction of the Probate Court"). It follows that, as a result of Marshall, cases with factual circumstances that are more tenuously connected with the direct probate of a will or administration of an estate — such as the earlier decisions of the Rhode Island Supreme Court in Dugdale and the United States District Court for the District of Rhode Island in Donato upon which the executor defendants here rely — will not be barred by the probate exception and that those prior cases might well be decided differently, post-Marshall, were they decided today. Accordingly, based on the United States Supreme Court's recent undertaking to narrow the application of the probate exception to claims more directly intertwined with the probate of wills and administration of estates, the executor defendants' motion for summary judgment for lack of subject matter jurisdiction is denied.
 PLAINTIFFS' AND EXECUTOR DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE EXECUTOR DEFENDANTS
In light of the jurisdictional determinations made above, this Court will address the cross motions for summary judgment filed by the plaintiffs and the executor defendants concerning the plaintiffs' breach of fiduciary duty claim against the executor defendants. The plaintiffs argue that they are entitled to summary judgment because the executor defendants breached their fiduciary duties to the plaintiffs by selling the shares of Nyman stock to Nyman at a price below market value without taking any steps to "independently verify the reasonableness of the sales price." (Mem. in Supp. of Pls.' Mot. for Summ. J. p. 12, 21.) The plaintiffs aver that this inaction on the part of the executor defendants represented a breach of their fiduciary obligations to the plaintiffs stemming from the parties' executor-beneficiary relationship. In addition, the plaintiffs allege a further breach of fiduciary duty by virtue of the executor defendants' failure to timely appeal the 1995 Probate Court order to sell the shares at a price of $145.36. Id. at 16.
The executor defendants do not dispute the facts at issue. Instead, they defend their course as reasonable in light of the instructions left by the testator and assert that their actions did not constitute a breach of their fiduciary duties to the plaintiffs.
In her will, Magda Burt states:
 If I am the owner of any stock in the Nyman Manufacturing Company at the time of my death, I hereby direct my executors to offer all such stock to said Nyman Manufacturing Company for sale at the lowest price for which they are willing to sell it and to make no sale at any lower price without first offering such stock to said company, this same condition to be imposed upon my trustee if such stock becomes an asset of any trust.
(Magda Burt's Last Will and Testament ¶ Tenth.) The executor defendants maintain that this provision "clearly directs the executors to offer to sell any Nyman stock held by the estate back to the company for the lowest price that the executors were willing to allow." (Mem. in Supp. of the Co-Executor Defs.' Opp'n to Pls. Mot. for Summ. J. p. 12.) Similarly, the executor defendants contend that they did not breach their fiduciary obligations to the plaintiffs when they did not appeal the 1995 decision of the Probate Court. Further, the executor defendants claim that all of the beneficiaries, including the plaintiffs, were present at the Probate Court hearing and had every opportunity to appeal the decision on their own. Id. at 16.
Under Rhode Island law, to prevail on a breach of fiduciary claim, a plaintiff must establish that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the defendant's breach harmed the plaintiff. A.Teixeira Co. v. Teixeira, 699 A.2d 1383, 1387 (R.I. 1997). While the existence of a fiduciary relationship in the first place is often a fact-specific inquiry, the question of the duties that attach to such a relationship is one of law. Id. at 1389 (citing A. Teixeira Co. v. Teixeira, 674 A.2d 407, 408
(R.I. 1996)).
In Rhode Island, an executor or executrix is deemed a trustee of the assets of the probate estate, and, therefore, he or she owes a fiduciary duty to all beneficiaries. See Estate ofWickes v. Stein, 107 R.I. 260, 265-66, 266 A.2d 911, 914 (1970) (citing Michigan Trust Co. v. Grand Rapids, 247 N.W. 744 (Mich. 1933) ("[t]he relationship between an executor and the legatee or beneficiary is usually considered to be that of a trustee and a cestui que trust")). Neither the plaintiffs nor the executor defendants dispute that a legal duty existed between them at all times pertinent to the instant proceeding. Rather, it is the breach of that duty that is at issue.
As such, the issue of whether the executor defendants breached their legal obligations to the beneficiaries must be resolved by determining whether the executor defendants met the so-called "prudent man" standard. See, e.g., Donato v. BankBoston,
110 F. Supp. 2d. at 48 ("the `prudent man' standard applie[s] to the behavior of trustees as a matter of common law in Rhode Island"); Rhode Island Hosp. Trust Co. v. Copeland,39 R.I. 193, 215-16, 98 A. 273, 279 (1916) (citation omitted) ("[t]rustees must be prudent and vigilant and exercise a sound judgment. They are `to observe how men of prudence, discretion, and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital to be invested'").
It has been observed that "a trustee commits a breach of trust when he `intentionally or negligently does what he ought not to do or fails to do what he ought to do.'" Oscar A. Samos, Inc. v.Dean Witter Reynolds, Inc., 772 F. Supp. 715, 719 (D.R.I. 1991) (quoting Restatement (Second) of Trusts, § 201, comment a (1959)). It follows that resolving whether a breach of trust has occurred — or, in this case, whether the executor defendants have violated their legal obligations to the plaintiffs — is a question of fact. See, e.g., Travers v. Vaz, 714 A.2d 603,604 (R.I. 1998) (quoting DeNardo v. Fairmount FoundriesCranston, Inc., 121 R.I. 440, 448, 399 A.2d 1229, 1234 (1979) (citation omitted) ("in Rhode Island the general rule is that negligence is a question for the jury unless the facts warrant only one conclusion")). The parties agree to the following facts: the executor defendants received an offer from Nyman to purchase the 2,256 shares of stock; they simply relayed that offer to the plaintiffs as well as the other residuary beneficiaries without undertaking an independent appraisal of the stock or otherwise investigating the offer price in light of the fair market value of the stock, and they did not appeal from the 1995 Probate Court order mandating not that they distribute the stock, as they had requested, but that they sell the aforementioned shares at $145.36 per share. (Mem. in Supp. of Pls.' Mot. for Summ. J. pp. 12-16; Mem. in Supp. of Fleet's Mot. for Summ. J. pp. 3-4.) At this juncture, the facts presented by both parties are such that reasonable minds could differ as to a resolution of the question of whether the executor defendants in acting or failing to act in this manner breached the prudent man standard in their dealings with plaintiffs. See, e.g., Hershey v. Donaldson, Lufkin Jenrette Sec. Corp., 317 F.3d 16, 19 (1st Cir. 2003) (affirming denial of summary judgment where genuine issues of material fact exist that are "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party"); see also Hanley v.Alarie, 746 A.2d 125, 128 (R.I. 2000) (trial court found, after bench trial, that an executrix breached her fiduciary duty to an estate by failing to independently verify the reasonableness of an offer for the purchase of real estate and instead relying on the appraisal of a realtor with the potential for self-interest). Summary judgment, therefore, is improper. Accordingly, both the plaintiffs' and the executor defendants' respective motions for summary judgment with the respect to the plaintiffs' breach of fiduciary duty claim, to the extent premised on arguments that the question of breach can be decided as a matter of law, are denied.
 RES JUDICATA
The executor defendants also maintain that res judicata bars plaintiff Roland Burt's breach of fiduciary duty claim against them, such that they should be granted summary judgment as to this claim. The executor defendants reference two prior civil actions between Burt and Robert Gates and/or Fleet as executors, which, they argue, satisfy the elements of res judicata and, therefore, bar the instant action.
The doctrine of res judicata "makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or that could have been presented and litigated therein." ElGabri v. Lekas,681 A.2d 271, 275 (R.I. 1996). For res judicata to apply, the moving party must show "identity of parties, identity of issues, and finality of judgment in an earlier action." Beirne v.Barone, 529 A.2d 154, 157 (R.I. 1987) (citing Hebert v.Ventetuolo, 480 A.2d 403, 405 (R.I. 1984)). In determining the scope of the issues to be precluded in the second action, the Rhode Island Supreme Court has adopted the broad "transactional" rule that precludes the re-litigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] issue arose." ElGabri, 681 A.2d at 276 (quotingManego v. Orleans Board of Trade, 773 F.2d 1, 5 (1st Cir. 1985)). "What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. . . ."itter v. Mantissa Investment Corp. 864 A.2d 601, 605 (R.I. 2005) (citing id. (quoting Manego, 773 F.2d at 5).
In seeking summary judgment against plaintiff Burt on res judicata grounds, the executor defendants first rely on Burt v.Rhode Island Hospital Trust, C.A. No. PC 93-1285 (R.I.Super.Ct. 1993), which resulted in judgment as a matter of law for the defendant in 2003 and which was dismissed with prejudice on appeal in 2004, by agreement of the parties, in Burt v. RhodeIsland Hospital Trust, No. 2003-328-C.A. (R.I. Supreme Ct. 2003). In that case, Burt filed a breach of fiduciary duty claim against Fleet as co-executor of Magda Burt's estate, alleging that Fleet had spent too much of the estate's money in the course of its administration. Neither plaintiff Raymond Cyr nor defendant Gates were parties to that action. When plaintiff Burt attempted to amend his complaint in that earlier case, on the eve of trial in 2003, to include a claim against Fleet relative to the 1995 sale of the Nyman stock, similar to the claim he had asserted previously in this action and in his probate appeal filed in 2002,[11] the court precluded him from doing so (noting the difference in the claims and the fact that the complaint before the court concerned conduct prior to 1993) because the proposed amendment was untimely. The court then granted judgment as a matter of law in favor of Fleet with respect to his breach of fiduciary duty claim regarding spending by the executor, and the Supreme Court dismissed Burt's appeal with prejudice by agreement of the parties the following year.
Both Burt and Fleet were parties to that 1993 lawsuit and are parties here, thus satisfying the first prong of res judicata, at least as to the two of them. Admittedly, the appeal of that case was dismissed with prejudice by agreement of the parties in February 2004, thus resulting in a final judgment that could satisfy the third requirement of res judicata. See Am.Cyanamid Co. v. Capuano, 381 F.3d 6, 17 (1st Cir. 2004) (quoting United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998)) ("a voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the res judicata criterion").
This Court finds, however, that there was not the requisite identity of issues between that case and the instant case to satisfy the requirements of res judicata. The earlier filed case concerned actions taken solely by defendant Fleet, as executor, in spending money in the administration of the estate before 1993, whereas plaintiff Burt here makes allegations against both executor defendants for breach of fiduciary duty arising out of the 1995 stock sale. The trial justice in the 1993 case in effect recognized this fact in ruling on the motion to amend when he characterized the breach of fiduciary duty claim that plaintiff Burt sought to add there by amendment as being so different from the breach of fiduciary duty claim originally brought such that it was deserving of an earlier amendment or other action. (Reply Mem. in Response to Pls.' Mem. Regarding the Cross Mots. For Summ. J. Between the Pls. and the Nyman Defs. Ex. A (Tr. of Decision of Justice Indeglia dated Mar. 25, 2003 at 17-20)) Indeed, plaintiff Burt already had brought the breach of fiduciary duty claim asserted here, as well as a related claim in his probate appeal, prior to the hearing on his motion to amend.
As such, the claim of breach of fiduciary duty filed by plaintiff Burt in this case was not litigated in the prior 1993 action. It was neither the subject of the stipulated dismissal on appeal nor did that judgment constitute a waiver by plaintiff Burt of that claim, as the appeal would not have adjudicated that claim on its merits, and plaintiff Burt intended to pursue the claim in this case and arguably in his probate appeal as well.
The claim of breach of fiduciary duty connected with the 1995 stock sale, filed here by plaintiffs Burt and Cyr against both executor defendants, is factually distinct from the claim in the 1993 case that plaintiff Burt filed against Fleet, as executor, alleging that it spent too much of the estate's money in the course of administering the estate prior to 1993. Trying the claim of the plaintiffs here for breach of fiduciary duty arising out of the 1995 stock sale, rather than ruling that such a claim had to have been brought in the 1993 case, if at all, makes sense as it constitutes a convenient trial unit distinct from plaintiff Burt's earlier filed claims and conforms to the parties' expectations. Id. at 604. The defendants did not expect that claim to be asserted in the 1993 case, as evidenced by their opposition to Burt's motion to amend filed on the eve of trial; plaintiff Burt likewise did not expect it to be tried there, as he had already asserted the claim here and arguably in his appeal from the Probate Court, filed his motion to amend at the eleventh hour and did not contest the denial of his motion to amend on appeal. It is a claim, therefore, that did not arise out of the same transaction or occurrence as plaintiff Burt's 1993 claim so as to require it to have been asserted in the 1993 case or to bar it from assertion here on grounds of res judicata. SeeRitter, 864 A.2d at 604-07 (holding that transactional rule for res judicata did not bar a wife's claim, after divorce judgment, for a one-half interest in the former marital residence based on her ownership of stock in a corporation that owned the residence).
To rule that plaintiff Burt's claim is barred by res judicata would result in unfairly barring that claim from ever being heard on its merits, even though it was asserted and remained pending prior to the court's decision on which the executor defendants attempt to rely for res judicata purposes. Accordingly, the case of Burt v. Rhode Island Hospital Trust does not bar plaintiff Roland Burt's instant claim for breach of fiduciary duty against the executor defendants under the doctrine of res judicata.
Finally, the executor defendants rely on Burt v. Gates, C.A. No. PP 02-2316 (R.I.Super.Ct. 2002), wherein Burt appealed to the Superior Court from a decision of the Probate Court, to argue for summary judgment against him in this case on grounds of res judicata. That appeal concerns the Probate Court's denial of Burt's petition to reconsider and review the proceedings of the 1995 hearing on the distribution of the shares of Nyman stock and, thus, is related to the issue underlying the plaintiffs' breach of fiduciary duty claim in this case. That probate appeal, however, has been held in abeyance and, to date, has not yet reached final judgment. See Maher v. GSI Lumonics, Inc.,433 F.3d 123, 127 (2005) (quoting AVX Corp. v. Cabot Corp.,424 F.3d 28, 32 (2005) (citation omitted) ("[a] final judgment for res judicata purposes `ends the litigation on the merits and [leaves] nothing for the court to do but execute the judgment'"). As such, that case cannot act as a res judicata bar to plaintiff Burt's claims against the executor defendants in this litigation. Accordingly, the executor defendants' motion for summary judgment as to plaintiff Roland Burt's breach of fiduciary duty claim, to the extent premised on his earlier filed cases and the doctrine of res judicata, is denied.
 LACHES
The executor defendants also aver that the doctrine of laches bars the plaintiffs' breach of fiduciary duty claim such that they should be granted summary judgment as to this claim for that reason as well. The executor defendants argue that the plaintiffs negligently sat on their rights between the receipt of the 1995 Probate Court order and the filing of their claims in this action. They note that it has now been approximately ten years since the time of these alleged wrongdoings. Because of significant changes to both the financial fortuity of Nyman and the corporate structure of Fleet, the executor defendants claim that this delay has put them now at a disadvantage. The plaintiffs do not address the length of time that has elapsed between the 1995 Probate Court order and the instant matter, but, rather, they maintain that the executor defendants have failed to demonstrate the degree of prejudice to them from this delay that is necessary to warrant barring their claim based on the doctrine of laches.
"Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." O'Reilly v. Glocester, 621 A.2d 697,702 (R.I. 1993) (citing Fitzgerald v. O'Connell, 120 R.I. 240,245, 386 A.2d 1384, 1387 (1978)). In Rhode Island, "the application of the defense of laches is generally committed to the discretion of the trial justice." Andrukiewicz v.Andrukiewicz, 860 A.2d 235, 241 (R.I. 2004) (citation omitted). In reviewing the applicability of the defense of laches, a court must determine whether there was negligence on the part of the plaintiff that led to a delay in the prosecution of the case and, if so, whether the delay prejudiced the defendant. O'Reilly v.Glocester, 621 A.2d at 697. As our Supreme Court has noted:
 Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.
Adam v. Adam, 624 A.2d 1093, 1096 (R.I. 1993).
It is well-established that mere delay, or lapse of time, is not enough to sustain a claim of laches. See, e.g., Cavanaghv. Bostitch, Inc., 91 R.I. 239, 253, 162 A.2d 785, 792 (1960). Even assuming a delay by the plaintiffs in bringing their claims in this case, therefore, the real question is whether the executor defendants were significantly disadvantaged by any such delay. There is no question that the institutional co-executor has changed from 1995, when the wrong-doings took place, until today as a result of a series of bank mergers. See n. 1,supra. However, the key individuals in this case — namely, Robert Tyler and Robert Gates — have remained available to the parties at all relevant times. (Tyler Dep. Sept. 4, 1996; Tyler Dep. July 14, 1999; Gates Dep. Aug. 23, 2000.) Furthermore, the executor defendant bank is, or has recently been, a named defendant in a number of similar actions stemming from the same factual occurrences. See Kiepler v. Gates, C.A. No. KP 98-0337 (R.I.Super.Ct. 1998); Burt v. Gates, C.A. No. PP 02-2316 (R.I.Super.Ct. 2002). Therefore, the executor defendants have not, by way of affidavit or otherwise, established that plaintiffs' delay in bringing their breach of fiduciary duty claim, even if deemed unreasonable, has caused the executor defendants to suffer the kind of prejudice that would warrant the grant of summary judgment as to plaintiffs' claim on the grounds of laches. See Berthiaume v. Sch. Comm. ofWoonsocket, 121 R.I. 243, 250, 397 A.2d 889, 894 (1979) (holding that prejudice must be proven and cannot be inferred from a mere passage of time in asserting the defense of laches). Accordingly, the executor defendants' motion for summary judgment, to the extent premised on the doctrine of laches, is denied.
 NYMAN DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION
In a document styled Opposition to Plaintiffs' Motion for Partial Summary Judgment, the Nyman defendants also seek affirmative relief, asking this Court to find, as a matter of law, that this Court has no subject matter jurisdiction over the claims asserted against them. They contend that if the plaintiffs objected to the sale of the stock, their only relief would have been to appeal the 1995 order of the Probate Court within twenty days of its entry. See R.I. Gen. Laws § 33-23-1. The plaintiffs' failure to do so, argue the Nyman defendants, precludes them from challenging the order in what the Nyman defendants refer to as a "collateral" proceeding.
The claims against the Nyman defendants are of a different nature than those asserted against the executor defendants. The claims against the corporate defendants involve issues of corporate governance — matters over which the Probate Court clearly has no jurisdiction. It is well-established in Rhode Island that "probate courts are `of special and limited jurisdiction . . . exercis[ing] . . . jurisdiction only in a manner and to the extent conferred by statute.'" Carr v.Prader, 725 A.2d 291, 293 (R.I. 1999) (quoting Harrop v.Tillinghast, 59 R.I. 255, 258, 195 A. 226, 228 (1937)). Consequently, the probate courts of this state possess no powers beyond those specifically delineated by statute, as previously discussed.
In delineating the bounds of a probate court's authority, the Rhode Island Supreme Court has recognized that, although a probate court may have jurisdiction to adjudicate certain issues related to matters within its jurisdiction, not all litigation that is tangential to such matters may be pursued in the probate court. A probate court, for example, has no jurisdiction to hear what amounts to a contract dispute between a ward and a guardian.See Champlin v. Slocum, 41 R.I. 227, 231, 103 A. 706, 708
(1918). Similarly, the probate court has no jurisdiction to hear a dispute over corporate governance simply because some of the corporation's stock was part of a probate estate. See, e.g.,Mainline Constr. Co. v. Warren, 227 N.E.2d 432, 438 (Oh. 1967) (holding that a probate court had no jurisdiction to determine whether a contract requiring a decedent's shares of stock to be sold back to a company upon his death was enforceable, stating, "our Probate Courts have primarily been responsible for the preservation and correct administration of property . . . belonging to estates. . . . They have not been primarily concerned with the litigation of serious and oftimes acrimonious disputes"). As the plaintiffs' claim for breach of fiduciary duty against the Nyman defendants could not have been heard by the Probate Court in the first instance, the plaintiffs were not required to first bring that claim in Probate Court or to appeal from a decision of the Probate Court in 1995 that did not adjudicate that claim. Accordingly, this Court has subject matter jurisdiction over the plaintiffs' claim that the Nyman defendants breached their fiduciary duties by withholding information pertaining to the sale of the company.
 PLAINTIFFS' AND NYMAN DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM
As with the executor defendants above, because it has been determined that this Court has jurisdiction to hear the plaintiffs' breach of fiduciary duty claim against the Nyman defendants, this Court will address the parties' cross-motions for summary judgment pertaining to this claim. The plaintiffs aver that they are entitled to summary judgment because the facts are uncontested that the Nyman defendants misrepresented information pertaining to Nyman's 1995 and/or 1996 profits; that they misrepresented their intentions to sell the business; and that they failed to obtain an independent appraisal of Nyman, thereby allowing the estate's shares to be sold at a price below their market value. The Nyman defendants contend that no duty existed as between the corporation and the plaintiffs as residuary beneficiaries. Consequently, argue the Nyman defendants, the plaintiffs' claim must fail as a matter of law. Moreover, the Nyman defendants argue in the alternative that, if a duty existed, they are entitled to summary judgment nonetheless because there was no plan in place to sell the corporation as the plaintiffs have alleged.
 WHETHER THE NYMAN DEFENDANTS OWED THE PLAINTIFFS A FIDUCIARY DUTY
The question of whether the Nyman defendants owed plaintiffs a fiduciary duty is a threshold issue requiring resolution before this Court can address the factual arguments made by both parties relative to that duty's breach. The plaintiffs refer this Court to the commonly accepted maxim that corporate officers and directors — such as the Nyman defendants — owe fiduciary duties and the highest degree of care and loyalty to the corporation and its shareholders. A. Teixeira Co. v. Texieira, 699 A.2d 1383,1386 (R.I. 1997); Lawton v. Nyman, 327 F.3d 30, 38 (1st
Cir. 2003) (citing Olney v. Conanicut Land Co., 16 R.I. 597,18 A. 181, 182 (R.I. 1889); Point Trap Co. v. Manchester,98 R.I. 49, 199 A.2d 592, 595-96 (R.I. 1964); Hodges v. Screw Co.,1 R.I. 312, 340-41 (1850)). The plaintiffs argue that these duties extended to all shareholders of Nyman, including its minority shareholders such as Magda Burt's estate and its beneficiaries. (Pls.' Sixth Amended Complaint ¶ 32) They further contend that the Nyman defendants violated these duties by failing to procure an independent appraisal of the value of Nyman's stock and by failing to fully disclose the value of Nyman's stock to Magda Burt's estate and its beneficiaries. (Id. ¶¶ 24, 25, 33, 34) The plaintiffs provide no authority for their stated proposition that the officers of Nyman owed to them as residuary beneficiaries the same duties as were owed to actual shareholders.
To determine whether the directors and officers of Nyman owed a fiduciary duty to the residuary beneficiaries of Magda Burt's estate, and, therefore, whether the residuary beneficiaries can bring the instant claim, it is first necessary to ascertain the nature of the interest held by the plaintiffs. "A residuary clause is that part of the will which makes disposition of the residuum of part or all of testator's property not otherwise disposed of by the other provisions of the will." Page on Wills
§ 33.46, at 369. Pertinent to the case at bar, a defining characteristic of the residuary clause is that "where there are other definite and important bequests, [the residuary clause] cannot be taken as the primary and principal factor determinative of testamentary intent; it is a catch-all." Rhode IslandHospital Trust Co. v. Votolato, 102 R.I. 467, 483, 231 A.2d 491,499-500 (1967) (quoting State Bank Trust Co. v. Nolan,
130 A. 483, 490 (1925)). As such, the residuary provision operates subsequent to the operation of the other testamentary provisions.State Bank Trust Co. v. Nolan, 130 A. at 490.
Rules governing the construction of wills direct that a residuary clause must be construed as though it were the last dispositive clause of the will, whatever its actual position might be. Page on Wills § 33.47, at 371. "Specific or general legacies which are given by clause which follow the residuary clause, are given the same priority over it, and the residuary legatee is to be paid only after all other gifts are satisfied."Id. Accordingly, despite the location of the instant residuary clause at Paragraph Ninth of Magda Burt's will, that clause only can be given effect after the operation of each of the remaining provisions in the will.
Paragraph Tenth, as noted supra, provides instructions relative to the sale of any Nyman stock in the estate at the time of Magda Burt's death. If a testator drafts a provision, such as that contained in Paragraph Tenth of the instant will, for selling certain property, any proceeds not otherwise devised pass under the residuary clause. Page on Wills § 33.53, at 386. In this vein, it is incumbent upon this Court to attempt to construe the testator's true intentions. See, e.g., In re DiBiasio,705 A.2d 972, 973-74 (R.I. 1998) (quoting Prince v. Roberts,436 A.2d 1078, 1080 (R.I. 1981); citing Fleet Nat'l Bank v.Miglietta, 602 A.2d 544, 549 (R.I. 1992) ("This court's `primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law'")).
The plaintiffs' claim that the Nyman defendants breached their fiduciary obligations toward the plaintiffs necessarily begins with the plaintiffs' presumption that they were, in fact, minority shareholders of Nyman at the time of the alleged wrongdoing. It is clear from the testator's will that she intended for the executors of her estate to sell any stock she held in Nyman at the time of her death back to the company "at the lowest price for which they are willing to sell it." (Magda Burt's Last Will and Testament ¶ Tenth.) Accordingly, pursuant to the language of the testamentary document, the plaintiffs at no point had any present possessory interest in the Nyman stock sufficient to make them shareholders. See Chile v. Beck,452 A.2d 626, 627 (R.I. 1982) (the "primary purpose of any will construction suit is the discovery of the testator's or the testatrix's dispositive intent by reading the will in its entirety in the light of the circumstances attendant to the will's execution"); see also Magda Burt's Will ¶¶ 9-10. Rather, as residuary beneficiaries along with eight other named beneficiaries, they had an undivided one-tenth expectancy interest in the residuary estate, into which any proceeds derived from the sale of the shares would be deposited.
Consequently, the plaintiffs' claim that a fiduciary duty arose by virtue of the corporation-shareholder relationship between them and the Nyman defendants is misplaced. To the extent that the plaintiffs premise their claim against the Nyman defendants for breach of fiduciary duty on an alleged corporation-shareholder relationship, therefore, that claim must fail as a matter of law.
Absent a proven corporation-shareholder relationship, the next question is whether the plaintiffs nonetheless may assert a breach of fiduciary duty claim against the Nyman defendants based on a common law theory of breach of fiduciary duty that is not dependent on such a relationship. A fiduciary relationship between the parties may exist at common law depending upon: (1) whether there is reliance by one party on another; (2) the relationship between the parties prior to the incidents that gave rise to the underlying lawsuit; (3) the relative business capacities of the parties; and (4) the readiness of one party to follow the other's guidance in complicated transactions. SeeRhode Island Hosp. Trust Nat'l Bank v. Bogosian, 11 F.3d 1092,1101 (1st Cir. 1993); Simpson v. Dailey, 496 A.2d 126, 129
(R.I. 1985). As such, "[t]he question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact." Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.,44 F.3d 40, 44 (1st Cir. 1995) (citing Broomfield v. Kosow,212 N.E.2d 556, 560 (Mass. 1965)); see also Simpson v. Dailey,496 A.2d at 129 (noting that "there are no hard and fast rules about when a confidential relationship will be found" and leaving it to the jury to make that determination).
Courts generally have recognized fiduciary relationships in situations involving reliance by one party brought about by either past dealings with, or direct influence from, the other party. See, e.g., Renaud v. Ewart, 712 A.2d 884, 885-86
(R.I. 1998) (affirming decision of a trial justice, sitting without a jury, that a fiduciary relationship existed between a woman and her son-in-law where the son-in-law offered to make a loan to the woman who was in "desperate need" of the financial assistance and induced her into conveying to him the title to her property so that he could obtain the financing to make the loan in the first place); Simpson v. Dailey, 496 A.2d at 129
(upholding jury instructions relative to the existence of a fiduciary relationship on the grounds that a jury could so find because the evidence showed a "close familial relationship" between the parties and frequent financial guidance which influenced the parties' decision-making). To the contrary, courts are less likely to find a fiduciary relationship where the connection between the parties is more attenuated, where there is no real inequality at play, or where there is little or no evidence of any reasonable reliance. See, e.g., Indus. Gen.Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d at 44-45 (reversing lower court finding of fact that a fiduciary relationship existed between a supply company and a manufacturer because "there [was] no evidence that [the manufacturer] directed or was in any other way involved with" the supplier's business decisions and, further, that the manufacturer's "overall `management' role [was not] sufficient to transform the parties' relationship into a fiduciary one"); Rhode Island Hospital Trust Nat'l Bank v.Bogosian, 11 F.3d at 1101 (upholding decision by United States District Court for District of Rhode Island granting summary judgment on the issue of whether a fiduciary relationship existed because, as between plaintiff borrower and defendant bank, the plaintiff borrower was a "sophisticated businessperson who was represented by counsel at all relevant times" and, therefore, no fiduciary obligations had been formed).
Here, the Nyman defendants claim that the plaintiffs have produced no evidence that they were anything but strangers to the sale of the estate's shares; that they were represented by or dealt with the corporate defendants; that they were influenced by the corporate defendants; that there existed any inequality between them and the corporate defendants; or that they depended on the corporate defendants in any manner. Consequently, the Nyman defendants aver that they are entitled to summary judgment on the plaintiffs' claim against them for breach of fiduciary duty, as the plaintiffs have not presented any facts which could establish a fiduciary relationship between them and the Nyman defendants.
This Court's review of the pleadings, affidavits, and other evidence, however, indicates that, at a minimum, there are disputed issues of material fact as to whether a fiduciary relationship existed. Notably, Nyman's formal offer to buy the estate's shares — signed by Keith Johnson — included a provision that required "the positive approval of the transaction by each and every beneficiary of the estate for the purchase of the [estate's] shares." (Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. E.) The record contains evidence that notice of the proposed sale was sent to the ten residuary beneficiaries (Robert Tyler Aff. Ex. F) and that signed approval forms were received from several beneficiaries, including Raymond Cyr. (Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. E.)
This evidence calls into question the status of the relationship between the plaintiffs and the Nyman defendants during the course of the stock sale. Consequently, with the record before it, this Court is not in a position to declare whether a fiduciary duty existed between these parties as a matter of law. Mindful of the fact that the existence or nonexistence of a fiduciary relationship is a "fact-intensive inquiry," A. Teixeira Co. v. Texeira, 699 A.2d at 1387, this Court finds that the evidence is sufficient at this juncture to create a genuine issue of material fact as to whether the Nyman defendants stood as fiduciaries toward the plaintiffs. SeeSimpson v. Dailey, 496 A.2d at 129 ("[the court is] satisfied that the jury could find the existence of a fiduciary relationship"). Accordingly, the particular issue of whether a fiduciary relationship existed between the plaintiffs and the Nyman defendants is best addressed through a development of a full factual record at trial. As such, the Nyman defendants' motion for summary judgment based on the absence of any fiduciary duties toward the plaintiffs is denied.
 WHETHER THE NYMAN DEFENDANTS BREACHED THEIR FIDUCIARY DUTY TO THE PLAINTIFFS
Both the plaintiffs and the Nyman defendants have moved for summary judgment on the plaintiffs' claim that the Nyman defendants breached fiduciary obligations toward the plaintiffs. Given this Court's determination that the question of whether a fiduciary relationship existed between the parties is one of fact best left for trial, the parties' motions relative to breach of such duty need not be addressed by the Court. Assuming,arguendo, however, that the trier-of-fact finds that a fiduciary relationship existed between the parties, the underlying motions will then become ripe for examination. As such, this Court will undertake to analyze these motions in the name of judicial economy.
The plaintiffs allege that the Nyman defendants breached their fiduciary duty when they failed to disclose the value of the stock or their plans to sell the company at or around the time they purported to purchase the shares from Magda Burt's estate. The plaintiffs note that Nyman hired Keith Johnson in 1994 to "beg[i]n a program to acquire all outstanding shares and get the business ready for sale to an outsider." (Mem. in Supp. of Pls.' Mot. for Summ. J. p. 4.) The plaintiffs reference a January 1995 letter from the corporation to the estate's executor making an unsolicited offer to buy the stock, marking the beginning of the Nyman defendants' attempt to consolidate the company's stock. (Pls.' Mem. Regarding the Cross Mots. for Summ. J. Between the Pls. and the Nyman Defs. p. 9.) Furthermore, the plaintiffs note that Keith Johnson entered into a financing agreement with a party unrelated to these proceedings in May 1995 and mentioned to that entity the possibility that Nyman may be sold. Id. at 11. This conversation, according to the plaintiffs, occurred less than two months prior to Nyman's verbal offer to redeem the stock from the estate for $145.36 a share. Id.
The Nyman defendants argue that the plaintiffs have submitted no evidence whatsoever of an intent to sell the corporation prior to the sale of the estate's shares. As the Nyman defendants point out, Keith Johnson was hired in 1994 to reverse the company's financial standing. (Keith Johnson Aff. ¶ 1.) Further, according to the Nyman defendants, the evidence shows that the company's officers and directors believed that it would be "very difficult" to sell the corporation at that time, id. at ¶ 5, and that there were neither buyers nor offers to buy Nyman in 1995. Id.
at ¶ 9.
It is apparent that, in the event that it is determined at trial that a fiduciary relationship existed between the Nyman defendants and the plaintiffs, the plaintiffs' claim for breach of such duty is not ripe for summary resolution. Summary judgment shall not enter if there exist any genuine issues of material fact. R.I. Super. Ct. R. Civ. P. 56(c). The moving party bears the burden of proving that no evidence supports the non-moving party's claims. Celotex v. Catrett, 477 U.S. 317, 325 (1986). There exist genuine issues of material fact as to whether the Nyman defendants failed to disclose the value of the stock and misrepresented their intentions to sell the company. Accordingly, in the event that it is found that the plaintiffs and the Nyman defendants had formed a fiduciary relationship, with all the inherent legal duties and obligations associated therewith, both the plaintiffs' and the Nyman defendants' motions for summary judgment as to the plaintiffs' claim for breach of fiduciary duty against the Nyman defendants are hereby denied.
 COLLATERAL ESTOPPEL
The plaintiffs also maintain that collateral estoppel precludes the Nyman defendants from defending their breach of fiduciary duty claim such that they are entitled to summary judgment as to their claim of breach. In making this argument, the plaintiffs rely on two cases decided by the United States District Court for the District of Rhode Island in which the Nyman officers and directors, as majority shareholders, were found to have breached their fiduciary duties to the company's minority shareholders.See Kiepler v. Nyman, C.A. No. 98-272-T 2002 U.S. Dist. LEXIS 19630 (Jan. 17, 2002) (Torres, J.);[12] Lawton v. Nyman,
C.A. No. 98-288-T 2002 U.S. Dist. LEXIS 17398 (Feb. 17, 2005) (Torres, J.).[13] Even assuming that the existence of a fiduciary relationship between the parties to this action is established, the plaintiffs' argument that collateral estoppel should bar the Nyman defendants from arguing that they did not breach any fiduciary duties to the plaintiffs is without merit. "Under the doctrine of collateral estoppel, `an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" George v. Fadiani, 772 A.2d 1065, 1067-68 (R.I. 2001) (internal citations omitted). The Rhode Island Supreme Court has set forth a tripartite test for determining when collateral estoppel should be applied: "there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding." Id.
This Court finds that there is no identity of parties between the Kiepler and Lawton litigation and the case at bar, and, therefore, the plaintiffs' argument that this Court should grant summary judgment on their breach of fiduciary duty claim is not persuasive. It is well-settled in Rhode Island that majority shareholders in closely held corporations owe a heightened fiduciary duty to minority shareholders. See 9 Zolman Cavitch,Business Organizations, § 108A.02[4] (2004); see alsoHendrick v. Hendrick, 755 A.2d 784, 791 (R.I. 2000) (discussing the "heightened good faith standard" that exists in close corporations that is designed to protect the expectations of the minority shareholders against oppression or any "visible departure from the standards of fair dealing or fair play").
The plaintiffs in the two prior federal court proceedings were minority shareholders. In Lawton, the plaintiffs were Judith A. Lawton — sister of Robert and Kenneth Nyman — with her husband Thomas and seven of their adult children, all of whom were minority shareholders in Nyman. Lawton v. Nyman, No. 98-288-T 2002 U.S. Dist. LEXIS 17398 at *1. Likewise, in Kiepler, the plaintiffs were Beverly Kiepler — sister of Robert and Kenneth Nyman — and her daughter, Kristen Branch, both minority shareholders in Nyman. Kiepler v. Nyman, No. 98-272-T 2002 U.S. Dist. LEXIS 19630 at *1. In contrast, the plaintiffs in the instant litigation, as noted above, are not shareholders. Rather, they are the residuary beneficiaries of an estate that once held stock in Nyman.
This distinction is dispositive of the present question of whether collateral estoppel applies because the duties owed by the Nyman defendants to the plaintiffs in the prior federal court proceedings are different than those that they may be found to owe to the plaintiffs in this case. See discussion at 25-28,supra. As such, it necessarily follows that breach of one duty is not necessarily breach of the other duty. Accordingly, the plaintiffs here are neither similarly situated, nor "privy," to either the Kiepler plaintiffs or the Lawton plaintiffs, as their interest in the shares of Nyman stock is far more attenuated. In addition, given the dismissal stipulations that followed the federal court decisions at issue, see n. 12 and 13, supra, it appears that no final judgments exist upon which plaintiffs could rely for collateral estoppel purposes even assuming they could prove an identity of parties (which this Court finds they cannot) or issues (which this Court need not reach given its findings as to the absence of an identity of parties and final judgments). Plaintiffs' motion for summary judgment as to their claim of breach of fiduciary duty against the Nyman defendants, to the extent premised on collateral estoppel, is therefore denied.
 PLAINTIFFS' MOTION REGARDING JUDICIAL ESTOPPEL AND THE VALUE OF THE SHARES OF NYMAN STOCK
The plaintiffs argue that both the executor defendants and the Nyman defendants should be judicially estopped from asserting that the fair market value of the estate's shares was any less than $207.00 at the time the shares were sold to the defendants. According to the plaintiffs, the court in Lawton determined that the fair market value of the stock was $207.00 per share. Because the Nyman defendants' own expert established, in that prior proceeding, that $207.00 per share was the proper value to afford the stock, the plaintiffs assert that the Nyman defendants should now be estopped judicially from claiming that the fair market value of the stock was any less than the $207.00 per share that they advocated in federal court. Plaintiffs also seek, on judicial estoppel grounds, to bar the executor defendants from asserting any different value because, even thought they were not parties in the Lawson case, they share an interest with the Nyman defendants in establishing the fair market value of the stock.
The executor defendants respond that they were not parties to the action from which the plaintiffs derive the $207.00 value. As such, the executor defendants maintain that they have the right to dispute the plaintiffs' estimation of the value of the stock. The Nyman defendants contend that they should not be estopped from disputing the fair market value of the estate's shares because that particular issue was not "necessary" to the outcome of the Lawton litigation.
The court in Lawton made findings as to the fair market value of Class A shares on particular dates because the plaintiffs in that action alleged that a series of transactions evidenced a scheme to defraud them. Lawton v. Nyman, No. 98-288-T 2002 U.S. Dist. LEXIS 17398 at *26. As the plaintiffs have noted, the court in Lawton found that on November 6, 1995, when the officers and directors of Nyman granted themselves options to purchase the stock at $145.36 per share, the fair market value of the stock was $207.00 per share.
The doctrine of judicial estoppel prevents a party from "contradicting, while testifying under oath, his testimony in a proceeding before a court of another state," DH Therapy Assoc.v. Murray, 821 A.2d 691, 693 (R.I. 2003) (quoting Finley v.Kesling, 433 N.E.2d 1112, 1118-19 (Ill.Ct.App. 1982)), or from asserting "a contention which would be diametrically opposed to his previously asserted position." Id. (quoting Yarber v.Pennell, 443 S.W.2d 382, 385 (Tex.Civ.App. 1969)). The primary purpose underlying the doctrine is to prevent a party from deriving an unfair advantage by asserting a position inconsistent with one previously espoused. Id. (citations omitted); seealso Behrens v. Baldenecker, 77 N.W.2d 917, 919 (S.D. 1956) (judicial estoppel prevents a party from "playing fast and loose with the courts"). "Judicial estoppel is an equitable doctrine invoked by a court at its discretion." Alternative Sys.Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 (1st Cir. 2004) (citing New Hampshire v. Maine, 532 U.S. 742, 750
(2001)). As such, and because the doctrine is relevant to the admissibility of particular evidence, the trial justice is particularly suited to deciding whether it should be applied.Id. at 31.
This Court finds that the plaintiffs have raised judicial estoppel preemptively, before there has been any indication that the Nyman defendants mean to play "fast and loose" with the judicial system. In addition, plaintiffs have failed to show how the doctrine would apply to the executor defendants by extension. Application of the doctrine at this summary stage with respect to the value of the Nyman stock shares, therefore, would be premature. Accordingly, the plaintiffs' motion for summary judgment, to the extent premised on judicial estoppel, is denied without prejudice to the plaintiffs' right to renew these legal arguments at a later date.
 CONCLUSION
Accordingly, the executor defendants' motion for summary judgment on the basis of lack of subject matter jurisdiction over the plaintiffs' claim for breach of fiduciary duty is denied. The plaintiffs' and the executor defendants' cross motions for summary judgment relative to the plaintiffs' claim of breach of fiduciary duty are each denied as there exist genuine issues of material fact in dispute as to whether the executor defendants breached any fiduciary obligations to plaintiffs. The executor defendants' motion for summary judgment premised on arguments that plaintiff Burt's breach of fiduciary duty claim is barred by the doctrines of res judicata and that both plaintiffs' breach of fiduciary duty claims are barred by the doctrine of laches are likewise denied. The Nyman defendants' motion for summary judgment on the plaintiffs' claim against them for breach of fiduciary duty, premised on lack of subject matter jurisdiction, is also denied. The Nyman defendants' motion for summary judgment as to whether a duty existed between them and the plaintiffs is granted to the extent plaintiffs premise their claim for breach of fiduciary duty on an alleged corporation — shareholder relationship between them and the Nyman defendants and denied to the extent plaintiffs premise that claim on a common law theory of breach of fiduciary duty not dependent on such a relationship. The balance of the plaintiffs' and Nyman defendants' cross motions for summary judgment on the plaintiff's claim for breach of fiduciary duty are denied, as there are genuine issues of material fact in dispute as to whether there was a fiduciary relationship between them and, if so, whether it was breached. The plaintiffs' motion for summary judgment against the Nyman defendants for breach of fiduciary duty premised on the doctrine of collateral estoppel is likewise denied. Plaintiffs' motion for summary judgment against all defendants on judicial estoppel grounds, too, is denied, without prejudice to its renewal at a later stage of these proceedings.
The parties are directed to confer and to submit to this Court forthwith for entry an agreed upon form of order that is consistent with this Decision.
[1] The Sixth Amended Complaint in this action lists this defendant as Rhode Island Hospital Trust National Bank a/k/a Fleet National Bank. As a result of a series of mergers, defendant Fleet National Bank is a Bank of America Corporation and successor in interest to Rhode Island Hospital Trust National Bank. Under the will of Magda Burt, the testator originally named Rhode Island Hospital Trust National Bank and Ada Sawyer as co-executors. Defendants Fleet and Gates are successor co-executors. (Mem. in Supp. of Fleet's Mot. For Summ. J. p. 1; Ex. A) At all times relevant to the instant proceeding, Robert Tyler, formerly First Vice President of Fleet and an employee of the Fleet Trust Department, was the Fleet employee most familiar with Fleet's activities in its capacity as co-executor of Magda Burt's estate. (Jan. 10, 2003 Aff. of Robert J. Tyler, Jr. in Supp. of Co-Executor Defs.' Opp. to Pls.' Mot. for Summ. J. ¶ 1.)
[2] While Robert Tyler's affidavit indicates that Raymond Cyr did not respond to the notice of the proposed sale, Fleet submitted a copy of Raymond Cyr's vote approving the sale thereby indicating that he, in fact, had received that notice.
[3] That case, entitled Burt v. Rhode Island Hospital Trust,
C.A. No. 93-1285 (R.I.Super.Ct. 1993), resulted in a judgment as a matter of law for the defendants on March 28, 2003. (Mem. in Supp. of Fleet's Mot. for Summ. J. Ex. N.) Roland Burt appealed the judgment, in Burt v. Rhode Island Hospital Trust, No, 2003-328-C.A. (R.I. Supreme Ct. 2003), but the parties settled the appeal by stipulation on February 13, 2004. Id. at Ex. 0.
[4] See Robert Tyler Aff. ¶ 14; see also R.I. Gen. Laws §33-23-1(a) ("[a]ny person aggrieved by an order or decree of a probate court . . . may . . . appeal to the superior court for the county in which the probate court is established").
[5] Id. at Ex. K. That action is entitled Burt v. Gates,
C.A. No. PP 02-2316 (R.I.Super.Ct. 2002).
[6] In Kiepler, one of the ten residual beneficiaries filed a petition in the Probate Court following the transaction allowing Nyman to redeem the 2,256 shares of stock for $145.36 per share, alleging that the deal constituted a violation of the co-executors' fiduciary duties to the plaintiff. Id. at 3. The Probate Court denied the petition, and the plaintiff appealed from the denial to the Superior Court pursuant to R.I. Gen. Laws § 33-23-1. Id. In addressing cross motions for summary judgment, Justice Thompson rejected the co-executors' argument that the plaintiff's "failure to challenge the 1995 Order precludes her ability to bring a subsequent, separate action to remedy any waste to the Burt Estate caused by the Co-Executors' alleged misconduct." Id. at 5. The court explained that "the underlying petition herein and subsequent appeal raise issues which are separate and distinct from the substance of an appeal that would have ensued from the 1995 Order." Id.
[7] The creation of the probate exception can be traced to the language of the Judiciary Act of 1789. See, e.g., Dragan v.Miller, 679 F.2d 712, 713 (7th Cir. 1982) (Posner, J.). The Act conferred on the federal courts, in diversity cases, concurrent jurisdiction over "all suits of a civil nature at common law or in equity." Judiciary Act of 1789, ch. 20, § 11,1 Stat. 78. In eighteenth-century England, the above-noted description applied only to suits brought in the common law court or the chancery court. Dragan v. Miller, 679 F.2d at 713. However, probate and intestate estate matters were then exclusively within the jurisdiction of the ecclesiastical court.Id. Consequently, the Act was interpreted to have purposefully excluded probate matters from federal concurrent jurisdiction, and thus was established a "judicially created doctrine
stemming in large measure from misty understandings of English legal history." Marshall v. Marshall, 126 S. Ct. 1735, 1741
(2006) (Ginsburg, J.).
[8] Id. at 1742. This case involved the estate of the decedent, J. Howard Marshall II. The decedent's widow, Vickie Lynn Marshall a/k/a Anna Nicole Smith, alleged that the decedent's son, E. Pierce Marshall, had imprisoned her husband against his wishes by surrounding him with hired guards effectively preventing personal contact between him and her; that he had made misrepresentations to the decedent; and that he had transferred property against his father's express wishes. Id.
The United States Bankruptcy Court for the Central District of California heard the tortious interference claim, as the decedent's widow had previously filed for bankruptcy in the course of probating her husband's estate. Id. The Bankruptcy Court entered judgment for the decedent's widow, and the decedent's son filed a post-trial motion to vacate the judgment and dismiss the case for lack of subject matter jurisdiction, arguing that the claim only could be brought in the probate court. Id. The Bankruptcy Court denied the motion as untimely, but also observed that a federal court has jurisdiction to adjudicate rights relative to probate property "so long as its final judgment does not undertake to interfere with the state court's possession of the property." 257 B.R. 5, 38 (C.D. Cal. 2002) (citing Markham v. Allen, 326 U.S. 490, 494 (1946), aff'd in part, rev'd in part Clark v. Allen, 331 U.S. 503 (1947)). On appeal, the United States District Court for the Central District of California determined that the probate exception did not apply to the underlying tortious interference claim and, therefore, affirmed the decision in favor of the decedent's widow.264 B.R. 609, 619-625 (C.D. Cal. 2001). Thereafter, the Court of Appeals for the Ninth Circuit reversed. Marshall v. Marshall,126 S. Ct. at 1744. The Court of Appeals held that "a State's vesting of exclusive jurisdiction over probate matters in a special court strips federal courts of jurisdiction to entertain any `probate related matter,' including claims respecting `tax liability, debt, gift [or] tort.'" Id. at 1741 (quoting 392 F.3d 1118,1133, 1136 (9th Cir. 2004)).
[9] It is more akin in this regard to the claim of fraud inChamplin v. Slocum, 41 R.I. 227, 103 A. 706 (1918), that the Rhode Island Supreme Court held would not be appropriate for resolution by the probate court. In that case, which involved a release between a guardian and a ward that allegedly was procured by fraud, the Supreme Court stated that "the probate court, which has no equity jurisdiction, is not adapted to the investigation and determination of fraud." Champlin, 41 R.I. at 231,103 A. at 708.
[10] See generally Pls.' Sixth Am. Compl. (seeking compensary and punitive damages against all defendants for alleged breach of fiduciary duty); see also Black's LawDictionary 795 (7th ed. 1999) (an "in personam" action is an action "[i]nvolving or determining the personal rights and interests of the parties").
[11] See Burt v. Gates, C.A. No. PP 02-2316 (R.I.Super.Ct. 2002) and discussion at p. 5, supra.
[12] By stipulation of the parties entered by the court on June 26, 2002, plaintiffs' complaint in this action was dismissed, with prejudice, against all defendants.
[13] By stipulation of the parties entered by the court on May 19, 2005, the final judgment entered by Judge Torres on February 17, 2005 was vacated and the action was dismissed, with prejudice.